**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

| | |
|---|---|
| STEPHEN PADGETT, Individually and On Behalf of All Others Similarly Situated, <br><br>           Plaintiff, <br><br>    v. <br><br> RIT TECHNOLOGIES, LTD.; AMIT MANTSUR; YOSSI BEN HAROSH; ERAN EROV; and MOTTI HANIA, <br><br>           Defendants. | Case No. 16-CV-04579-KM-JBC <br><br><br> **MOTION DATE: JULY 16, 2018** |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Page**

I.    **Introduction** ......................................................................................................... **5**

II.   **Background** .......................................................................................................... **6**

III.  **Legal Standard** ................................................................................................... **9**

IV.   **Argument** ........................................................................................................... **11**

    A.    Plaintiffs Fail To Plead Any Actionable Misrepresentation or Omission. .......... 11

        1.    Plaintiffs Fail To Allege any Misrepresentation or Omission. ................. 13

        2.    Plaintiffs Fail To Plead That The Statements Were False or Misleading When Made. ....................................................................... 15

        3.    The "Omissions" That Plaintiffs Identify Are Immaterial As A Matter of Law. ......................................................................................... 17

    B.    Plaintiffs Fail To Plead Sufficient Facts to Create A Strong Inference of Scienter. ........................................................................................................... 18

    C.    Plaintiffs' Section 20(a) Claim Fails for Lack of an Underlying Violation. ........ 21

    D.    Plaintiffs' Claims Should be Dismissed With Prejudice. .................................... 21

V.    **Conclusion** ........................................................................................................ **22**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanta Corp. Secs. Litig.*,
  180 F.3d 525 (3d Cir. 1999)...............................................................................5, 6, 7

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001), *aff'd sub nom. Gallagher v. Abbott
  Labs.*, 269 F.3d 806 (7th Cir. 2001)...........................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................5, 6

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) (en banc).................................................................8, 10

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007)........................................................................................6

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................................13

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ................................................................................9, 10

*In re Burlington Coat Factory Secs. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)................................................................................3, 14

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)..................................................................................5, 12

*Castlerock Mgmt., Ltd. v. Ultralife Batteries, Inc.*,
  68 F. Supp. 2d 480 (D.N.J. 1999) ............................................................................12

*In re Donald J. Trump Casino Sec. Litig.*,
  7 F.3d 357 (3d Cir. 1993) ..........................................................................................13

*In re Donald J. Trump Casino Secs. Litig.*,
  793 F. Supp. 543 (D.N.J. 1992), *aff'd*, 7 F.3d 357 (3d Cir. 1993).........................11

*EP Medsystems, Inc. v. EchoCath, Inc.*,
  235 F.3d 865 (3d Cir. 2000)......................................................................................14

*Greenstone v. Cambex Corp.*,
  975 F.2d 22 (1st Cir. 1992).........................................................................................7

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004)............................................................................17

*In re Hertz Glob. Holdings, Inc. Secs. Litig.*,
    No. CV 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017) ...................................14

*Hoey v. Insmed, Inc.*,
    No. CV 16-4323 (FLW), 2018 WL 902266 (D.N.J. Feb. 15, 2018) ...........................8

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)....................................................................7, 12, 15

*Issen v. GSC Enters.*,
    508 F. Supp. 1278 (N.D. Ill. 1981) ................................................................13

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ......................................................................13

*McCauley v. City of Chi.*,
    671 F.3d 611 (7th Cir. 2011) ..........................................................................5

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
    No. CIV.A. 05-1151 SRC, 2015 WL 2250472 (D.N.J. May 13, 2015) ........................8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ......................................................................15

*In re Milestone Sci. Secs. Litig.*,
    103 F. Supp. 2d 425 (D.N.J. 2000) ................................................................14

*In re NAHC, Inc. Secs. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).....................................................................3, 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ................................................................................8

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)........................................................................3, 8

*In re Party City Secs. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) ..................................................................6

*In re Rockefeller Ctr. Props. Inc. Secs. Litig.*,
    311 F.3d 198 (3d Cir. 2002)......................................................................6, 17

*Sec. Police & Fire Prof'ls of Am. Ret. v. Pfizer, Inc.*,
    No. 10-cv-3105 (SDW) (MCA), 2012 WL 458431................................................6

*Shapiro v. UJB Fin. Corp.*,
 964 F.2d 272 (3d Cir. 1992), *as amended* (May 27, 1992).....................................17

*In re Suprema Specialties, Inc. Secs. Litig.*,
 438 F.3d 256 (3d Cir. 2006)...................................................................................17

*In re Synchronoss Secs. Litig.*,
 705 F. Supp. 2d 367 (D.N.J. 2010) ................................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)...........................................................................................6, 7, 15

*Williams v. Globus Med., Inc.*,
 869 F.3d 235 (3d Cir. 2017)..................................................................................7, 8

*Wilson v. Bernstock*,
 195 F. Supp. 2d 619 (D.N.J. 2002) .............................................................................16

*Winer Family Tr. v. Queen*,
 503 F.3d 319 (3d Cir. 2007)..................................................................................8, 9

*Zucker v. Quasha*,
 891 F. Supp. 1010 (D.N.J. 1995), *aff'd,* 82 F.3d 408 (3d Cir. 1996).....................13

**Statutes**

15 U.S.C. § 78u-4 ...............................................................................................................6

15 U.S.C. § 78u-4(b)(1) .....................................................................................................6

15 U.S.C. § 78u-4(b)(2) .....................................................................................................7

**Rules**

17 C.F.R. 240.10b-5.......................................................................................................8, 14

Fed. R. Civ. P. 8 .................................................................................................................5

Fed. R. Civ. P. 9 .................................................................................................................5

Fed. R. Civ. P. 9(b) .........................................................................................................6, 7

Fed. R. Civ. P. 12(b)(6)......................................................................................................5

## I.       INTRODUCTION

Plaintiffs' Amended Complaint asserts that RiT Technology Ltd. ("RiT"), a defunct Israeli start-up technology company that was listed on NASDAQ, and certain of its officers violated securities laws by failing to state that RiT CIS, RiT's non-exclusive distributor in the Commonwealth of Independent States ("CIS") was its "major" distributor in the region, and by failing to characterize RiT CIS as (in Plaintiffs' own words) "vital to the viability" of the company. Under settled law, these allegations fail to state a claim, and the Amended Complaint should be dismissed.

*First*, Plaintiffs' allegations fail to plead any misrepresentation or omission, let alone a material one. Boiled down, all that Plaintiffs allege is that Defendants failed to use their preferred adjective to characterize the RiT CIS relationship, *i.e.*, that that RiT CIS was a "major" distributor. RiT had no legal duty to use Plaintiffs' preferred adjective, which is itself the exact type of vague characterization that courts routinely hold too indefinite to be actionable. And Plaintiffs make no effort to show why any of Defendants' statements were misleading, or even to plead any actual facts showing that RiT CIS was a "major" distributor or "vital to the viability" of RiT when the filings were made.

Nor would the superficial descriptor that Plaintiffs claim was omitted add anything to RiT's robust disclosures regarding its relationship with RiT CIS, let alone significantly alter the total mix of available information (as must be true for an omission to be material).  In fact, RiT's relationship with RIT CIS was not only disclosed in numerous filings that Plaintiffs quote but was further described in the Risk Factors of RiT's Form 20-F filing. And unsurprisingly, courts have repeatedly found immaterial as a matter of law allegations that securities issuers did not use a plaintiff's preferred adjectives, because they do not alter the total mix of information available to investors. That is particularly true here, where the ***very paragraph*** Plaintiffs claim in their

Complaint is misleading comes under the heading "Recent **Major** Business Developments" (emphasis added).

**Second**, Plaintiffs make no real effort to meet their burden to show a strong inference of scienter in their complaint. In almost two years since the original complaint was filed, all Plaintiffs have been able to muster are boilerplate allegations of knowledge. It is well established that these sorts of "conclusory allegations of motive and opportunity" and "stating that 'the defendant must have known'" do not satisfy the PSLRA's demanding standards. *In re Synchronoss Secs. Litig.*, 705 F. Supp. 2d 367, 399 (D.N.J. 2010). The only other allegations Plaintiffs offer are baseless accusations that RiT's officers and directors wanted to hide the extent of the company's relationship with Stins Coman, its largest shareholder—a relationship that is disclosed **over a hundred times** in the Form 20-F and Form 6-Ks that Plaintiffs quote in their complaint alone. Plaintiffs do not come close to meeting the PSLRA's demanding standards for pleading scienter.

In short, Plaintiffs' threadbare complaint neither adequately pleads a material misrepresentation nor a strong inference of scienter. Having had two years to come up with facts to support their claims, they have failed to do so. The complaint should be dismissed with prejudice.

## II.    BACKGROUND

RiT was a small start-up technology company selling Intelligent Infrastructure Management and indoor optical wireless technology solutions based in Israel and listed on the NASDAQ exchange. Amended Complaint, Doc. 23 ("Compl.") ¶ 7.

On March 3, 2015, RiT filed a Form 6-K to announce the signing of a new non-exclusive distributorship agreement with RiT CIS. Compl. ¶ 18; Kritzer Decl. Ex. 1[1]. The Form 6-K noted—

---

[1]    Because Plaintiffs quote from these filings in their complaint as the basis of their allegations, they are incorporated by reference into the complaint and are thus properly before the Court

repeatedly—that RiT CIS was an affiliate of RiT's largest shareholder, a Russian company called Stins Coman Incorporated ("Stins Coman"). *E.g.*, Kritzer Decl. Ex. 1 at 2 ("[W]e decided most recently to contract with a new Distributor, named 'RiT CIS LTD.' ('RiT CIS'), which is a Russian company affiliated with Stins Coman Incorporated, our controlling shareholder."). Despite the distributorship agreement being on the standard terms RiT offered all distributors, *id.* at 3, the Form 6-K disclosed that it had gone through the applicable conflict-of-interest Board procedures under Israeli law because it involved Stins Coman and that shareholders holding an aggregate of 1% of RiT's stock could demand a shareholders' meeting to review the transaction, *id.* In the same Form 6-K, RiT announced another non-exclusive distributorship agreement with another Stins Coman affiliate, Stins Engineering Pte Ltd., coving Singapore and South Asia. *Id.* at 4. Both Distributorship agreements were attached as exhibits to the filing.

The next month, RiT filed its annual Form 20-F (the foreign issuer equivalent of a Form 10-K) on April 22, 2015. Compl. ¶ 19; Kritzer Decl. Ex. 2. The filing repeatedly mentioned the new non-exclusive distributorship agreement with RiT CIS, listing it under the heading "Recent Major Business Developments." Kritzer Decl. Ex. 2 at 15. The signing of the agreement was also listed under "Financial Highlights for Full Year 2014." *Id.* at 26. All in all, RiT CIS appears twenty-one times in the text of the Form 20-F.

Both in connection with RiT CIS and separately, RiT repeatedly disclosed its relationship with Stins Coman. *Id.* Indeed, the Stins Coman relationship was the subject of three separate "risk

---

on a motion to dismiss. *In re NAHC, Inc. Secs. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (citing *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Additionally, in a securities action, the contents of a company's SEC filings are subject to judicial notice for the purpose of showing the information they disclosed. *Id.* (citing *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)).

factors," including one that specifically addressed RiT's exposure to Stins Coman through RiT

CIS and other distributorship arrangements dating back to 1994:

> **We may be affected by transactions with STINS COMAN.**
>
> We are engaged and may in the future engage in transactions with STINS COMAN or its affiliates. In particular, STINS COMAN has been our non-exclusive distributor in the CIS market, for our enterprise products since 1994, and in 2015 we appointed RiT CIS Ltd., or RiT CIS, a Russian company affiliated with Stins Coman, as an additional non-exclusive distributor of our products in Russia and the CIS. In addition, in 2012, we acquired the Beamcaster technology from Invencom, a technology for which we continue to dedicate significant resources. We believe that such transactions are beneficial to us and are, or will be, conducted upon terms that are no less favorable to us than would be available to us from unaffiliated third parties. However, STINS COMAN could, subject to compliance with provisions of Israeli law concerning related-party transactions, exercise its influence over our affairs in its own interest.
>
> *Id.* at 10.

All in all, Stins Coman's name appears well over a hundred times in the text of the filing.

*See generally id.*

Later that year, RiT announced via a press release, filed on December 14 as an exhibit to a

Form 6-K that RiT CIS had formed a strategic alliance with several "major Russian IT

Corporations," which were MAYKOR, CTI, and I-Teco. Compl. ¶ 21; Kritzer Decl. Ex. 3. The

plan behind the strategic alliance was to "provide access to new projects that strengthen RiT's

position in the Russian and CIS markets of engineering infrastructure, networking,

telecommunications and low-voltage systems," and thus "offer comprehensive solutions for the

most attractive vertical markets, major corporations and government agencies of Russia." Compl.

¶ 21.

Shortly thereafter, however, things took a turn for the worse. As the company announced

in a February 11, 2016, press release that was also filed as a Form 6-K, it was having difficulty

collecting payments due from RiT CIS and had doubts about whether Stins Coman would honor

promises it had made under a convertible loan agreement, which in each case the company attributed to the significant decline in the Russian economy at that time. Compl. ¶ 26; Kritzer Decl. Ex. 4. In that filing, RiT described RiT CIS as its "major distributor" in the CIS region. RiT continued to provide updates on the situations with RiT CIS and the convertible loan agreement, filing Form 6-Ks on April 20, 2016, and May 10, 2016. Compl. ¶¶ 28, 30; Kritzer Decl. Exs. 5 & 6. On June 30, RiT announced that it was entering Israeli insolvency proceedings. Compl. ¶ 37; Kritzer Decl. Ex. 7.

## III.    LEGAL STANDARD

A securities fraud plaintiff must satisfy the "most stringent pleading requirement in American civil law" to withstand a motion to dismiss. *McCauley v. City of Chi.*, 671 F.3d 611, 625 (7th Cir. 2011). "[W]hereas under Rule 12(b)(6), [courts] must assume all factual allegations in the complaint are true," the pleading requirement in securities fraud cases requires courts to "disregard catch-all or blanket assertions that do not live up to the particularity requirements of the statute, even if these assertions meet the [already-heightened] *Iqbal*-defined Rule 8 pleading requirements." *Synchronoss*, 705 F. Supp. 2d at 395. This "steep pleading requirement[ ]" "substantially heightens" the pleading standard in private securities cases. *Id.* at 416 ("Plaintiffs' argument cannot pass muster even under the more lenient standard of Rule 8, as interpreted in *Twombly* and *Iqbal*, and it certainly falls short of the steep pleading requirements set forth by Rule 9 and the PSLRA."); *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 145 (3d Cir. 2004) ("Congress expressly intended" to "substantially heighten"  the existing pleading requirements when it enacted the PSLRA).  *See also In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 532-33 (3d Cir. 1999) ("President Clinton vetoed the Reform Act on the grounds that it imposed excessively stringent pleading requirements" but "both houses of Congress overrode the President's veto and the Reform Act was enacted into law without changes to the pleading standard.").

As is well known, "[i]f the 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint should be dismissed." *Sec. Police & Fire Prof'ls of Am. Ret. v. Pfizer, Inc.*, No. 10-cv-3105 (SDW) (MCA), 2012 WL 458431, at *5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A court should not accept (i) "unsupported conclusions," (ii) "unwarranted inferences," or (iii) any "legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

Congress set the pleading bar for private securities fraud actions even higher in the PSLRA. The PSLRA was enacted as "a check against abusive litigation by private parties…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *see also Advanta*, 180 F.3d at 531 (Congress enacted the PSLRA to curb "the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability."); *In re Rockefeller Ctr. Props. Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (The PSLRA "imposes another layer of factual particularity to allegations of securities fraud."). To adequately plead a material misrepresentation, a plaintiff must not only allege **that** a statement is false, but also plead facts demonstrating **why** the statement is false. 15 U.S.C. § 78u-4(b)(1); *see also In re Party City Secs. Litig.*, 147 F. Supp. 2d 282, 300 (D.N.J. 2001) ("Simply referring to a series of public statements and then alleging, in a general and conclusory manner, that those disclosures were false or misleading is insufficient."). The particularity requirement in the PSLRA "extends that of Rule 9(b) and requires plaintiffs to set forth the details of allegedly fraudulent statements or omissions, including who was involved, where the events took place, when the events took place, and **why** any statements were misleading." *Rockefeller*, 311 F.3d at 217. Additionally, a plaintiff must identify the bases for the facts alleged. *See* 15 U.S.C. § 78u-4. Thus, "the complaint must not only state the allegations with factual particularity, but must also describe the *sources* of information

with particularity, providing the who, what, when, where and how of the sources…[and] the information those sources convey." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (emphasis added).  Even under Fed. R. Civ. P. 9(b), which applies to securities fraud complaints, a plaintiff must identify "all the pertinent facts," including "the who, what, when, where and how: the first paragraph of any newspaper story."  *Anderson v. Abbott Labs*., 140 F. Supp. 2d 894, 901 (N.D. Ill. 2001), *aff'd sub nom. Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001).

Finally, the PSLRA requires dismissal if there is any inference that is more compelling than the inference that the defendant acted with the requisite scienter. *Tellabs*, 551 U.S. at 324 (A plaintiff must allege facts supporting an "inference of scienter [that is] more than merely 'reasonable' or 'permissible' … [and instead must be] at least as compelling as any opposing inference." (citing 15 U.S.C. § 78u-4(b)(2)). "[C]onclusory assertions that the defendants acted knowingly" are insufficient as a matter of law, as it is "well established that a pleading of scienter 'may not rest on a bare inference that a defendant must have had knowledge of the facts.'" *Advanta*, 180 F.3d at 539 (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992)).

## IV.    ARGUMENT

### A.    Plaintiffs Fail To Plead Any Actionable Misrepresentation or Omission.

The Amended Complaint should be dismissed on the threshold ground that it fails to plead any misrepresentation or omission.  To plead a claim for securities fraud, a plaintiff must first "specify each allegedly misleading statement, why the statement was misleading, and if an allegation is made on information and belief, all facts supporting that belief with particularity" *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240 (3d Cir. 2017); *see also Institutional Inv'rs Grp.*, 564 F.3d at 263 ("The PSLRA imposes a particularity requirement on all allegations, whether they are offered in support of a statement's falsity or of a defendant's scienter."). Regarding omissions

claims, there is no general duty of disclosure under the securities laws. *See Williams*, 869 F.3d at 241. Thus, absent a specific and applicable duty to disclose, a claim for fraud by omission must plead facts that there was "an inaccurate, incomplete or misleading prior disclosure." *Oran*, 226 F.3d at 285–86; *see also Winer Family Tr. v. Queen*, 503 F.3d 319, 330 (3d Cir. 2007) (clarifying that there is no duty to disclose where the statement is "simply incomplete;" rather, the statement must be "so incomplete as to mislead." (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc))).

Plaintiffs' complaint relies on two core allegations to attempt to meet these standards: first, that RiT's securities filings failed to characterize RiT CIS as a "major distributor," and second, that they failed to disclose that RiT CIS was, in Plaintiffs' words, "vital to the viability" of RiT. Neither of these omissions is actionable. First, the absence of these subjective and indefinite characterizations does not change the fact that the disclosures RiT made were true. Rule 10b-5, which after all prohibits "an untrue statement of a material ***fact***" or "omit[ting] to state a material ***fact*** . . . necessary [in order] to make the statements [made, in the light of the circumstances under which they were made,] not misleading," does not create any duty to offer opinions *Cf. Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1321 (2015) (emphasis added) (declining to find liability under similar language of section 11 of the Securities Act of 1933 because the law "does not allow investors to second-guess inherently subjective and uncertain assessments."); *Hoey v. Insmed, Inc.*, No. CV 16-4323 (FLW), 2018 WL 902266, at *8 (D.N.J. Feb. 15, 2018) (finding *Omnicare* instructive in 10b-5 context); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. CIV.A. 05-1151 SRC, 2015 WL 2250472, at *20 (D.N.J. May 13, 2015) (same)

Besides, Plaintiffs cannot show how failure to include their preferred adjectives could have significantly altered the mix of information available to investors—particularly given that the relationship itself was amply and repeatedly disclosed. And in any case, Plaintiffs do not plead any particularized facts to show that the statements were false at *any* time, let alone when they were made.

### 1. Plaintiffs Fail To Allege any Misrepresentation or Omission.

Plaintiffs never specify what in particular they contend was misleading about RiT's prior statements, which is itself sufficient reason to dismiss their complaint under the PSLRA's particularity standard. But based upon the bold and italicized text Plaintiffs apply without further explanation to block quotes from RiT's securities filings, it appears that their complaint is with the characterization of RiT CIS as "an additional non-exclusive distributor" in the CIS region. Plaintiffs do not allege that that statement was literally false, but appear to suggest that the qualifications "major distributor" and "vital to the viability" of RIT were necessary to prevent it from being misleading.

To be misleading, "it is not enough to allege that the statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement *affirmatively led the plaintiff in a wrong direction* (rather than merely omitted to discuss certain matters)." *Synchronoss*, 705 F. Supp. 2d at 419; *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (to be misleading, a statement "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."). As the Third Circuit has noted, "the duty to disclose rule does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be so incomplete as to mislead." *Synchronoss*, 705 F. Supp. 2d  at 419-20 (quoting *Winer Family Tr.*, 503 F.3d at 330).

13

Courts have construed this narrowly. *E.g.*, *Backman*, 910 F.2d at 16 ("Disclosing that Polavision was being sold below cost was not misleading by reason of not saying how much below. Nor was it misleading not to report the number of sales, or that they were below expectations."). "[T]he burden of factual assertion establishing such 'misleading type' of incompleteness rests with the plaintiff." *Synchronoss*, 705 F. Supp. 2d at 420. Plaintiffs must plead with particularity why the statement was misleading. *Brody*, 280 F.3d at 1006 ("In order to survive a motion to dismiss under the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), the plaintiffs' complaint must specify the reason or reasons why the statements made by [RiT] were misleading.").

As in *Synchronoss*, "none of [Plaintiffs'] allegations states facts showing any wrongfulness of Defendants' statements, be these statements examined as a whole or in pieces." 705 F. Supp. 2d at 420. Precisely nothing in Plaintiffs' threadbare complaint pleads any facts, let alone particularized facts, to support their apparent contention that investors would be misled by the terms "additional" and "non-exclusive." Plaintiffs do not allege that reasonable investors would understand those terms to mean anything other than what they say on their face—that is, that RiT CIS was not RiT's first distributor in the CIS region, and RiT CIS's agreement was not an exclusive one. In short, nothing in Plaintiffs' complaint suggests that investors reading RiT's prior filings would believe a materially different state of affairs existed.

That is particularly true given the information *already available* to investors about RiT CIS from the very same securities filings that Plaintiffs cite. RiT had already repeatedly referred to RiT CIS in the very same filings that Plaintiffs cite, and had identified its exposure to RiT CIS's parent company Stins Coman as a specific risk factor in its 20-F. *See supra* at 4. Not only that, but one of

the paragraphs that Plaintiffs claim was misleading for failing to describe RiT CIS as "major" and "vital" is in a section titled "Recent **Major** Business Developments." *Id.* (emphasis added).

It is well-established that courts read allegations of securities fraud in the context of the disclosures that were actually made. *In re Donald J. Trump Casino Secs. Litig.*, 793 F. Supp. 543, 551-52 (D.N.J. 1992), *aff'd*, 7 F.3d 357 (3d Cir. 1993) (noting the "importance of viewing the challenged statements in context … [and that] to prevail, the plaintiffs must demonstrate that a particular statement, *when read in light of all the information then available to the market*, or a failure to disclose particular information, conveyed a false or misleading impression." (emphasis in original)).

Here, the failure to use Plaintiffs' preferred adjectives does not change the fact that the company made repeated disclosures about RiT CIS. Those disclosures included the fact that it was an affiliate of Stins Coman (described not only as the controlling shareholder but also a non-exclusive distributor itself since 1994), the fact that the distributorship agreement was a "Major Business Development" and a "Financial Highlight," and the fact that RiT CIS had entered into a "strategic alliance" with major Russian IT businesses. *See supra* at 4. Nor does it change the fact that investors were warned that transactions—including distributorship relationships—with Stins Coman and its affiliates (expressly including RiT CIS) presented a risk factor. *Id.*

### 2. Plaintiffs Fail To Plead That The Statements Were False or Misleading When Made.

A further fatal defect in Plaintiffs complaint is that they fail to plead any particularized facts to show that RiT CIS was a "major distributor" or "vital" on March 3, April 22, December 7, 2015, or indeed at *any* particular time. The *only* fact Plaintiffs distinctly plead in support of their "major distributor" allegation appears to be that the company used "major distributor" to describe RiT CIS in its February 11, 2016, press release, but not in previous filings. But "[t]o be actionable,

a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *NAHC,* 306 F.3d at 1330; *see Institutional Inv'rs Grp.*, 564 F.3d at 267 (requiring that falsity *at the time the statement was made* be "plead[ed] with the requisite [PSLRA] particularity."). Thus, even if RiT CIS was a "major distributor" in 2016, that is insufficient under the PSLRA to infer that it was a "major distributor" when its distributorship agreement was announced on March 3, 2015. Nor does that suffice to plead "major distributor" status on April 22, 2015 when the 20-F was filed, nor on December 7, 2015, when RiT CIS's strategic alliance with major Russian IT companies was announced.

Striking by their absence from Plaintiffs' complaint are any kinds of contemporaneous objective facts about RiT CIS's supposed "major distributor" status, which Plaintiffs seem to assume existed from the moment the distributorship agreement was announced. Plaintiffs offer no financials, no distributorship shares, and no confidential witness statements. All they plead is that RiT later used the phrase "major distributor" to describe RiT CIS. There are thus no pleaded facts, let alone particularized facts, to support the allegation that the statements or omissions in the 6-Ks or 20-F were false when made. Because Plaintiffs fail to plead falsity, this claim fails.

Plaintiffs fare even worse when it comes to pleading that RiT CIS was "vital to the viability" of RiT at the time that the statements were made. Again, plaintiffs appear to be working backwards: because RiT CIS was mentioned in 2016 as a cause of RiT's problems, plaintiffs seem to assume that it must have been "vital to the viability" of RiT in March, April, and December of 2015. Courts in this Circuit "have long rejected [such] attempts to plead fraud by hindsight." *Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 158; *see also Castlerock Mgmt., Ltd. v. Ultralife Batteries, Inc.*, 68 F. Supp. 2d 480, 488 (D.N.J. 1999) ("What plaintiffs *cannot* do is rely on a theory of 'fraud by hindsight' … Instead, plaintiffs must show that defendants misrepresented or omitted *existing*

material information which gave rise to a false and misleading impression."). Indeed, even before the PSLRA's heightened pleading standards, it was well-established that the later occurrence of some problem or other was not enough for a plaintiff to plead that a defendant had failed to disclose the risk of the problem. *See Zucker v. Quasha*, 891 F. Supp. 1010, 1017 (D.N.J. 1995), *aff'd,* 82 F.3d 408 (3d Cir. 1996). Plaintiffs thus fail to plead particularized facts to support falsity.

### 3.      The "Omissions" That Plaintiffs Identify Are Immaterial As A Matter of Law.

Yet another fatal issue with Plaintiffs' complaint is that Plaintiffs fail adequately to plead that disclosing the purported "major distributor" and "vital" status of RiT CIS would have altered the total mix of information available to investors about RiT. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 231-232 (1988) (requiring "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information."). Courts have consistently rejected claims that omitting characterizations and judgments is material. "Since the use of a particular pejorative adjective will not alter the total mix of information available to the investing public . . . such statements are immaterial as a matter of law and cannot serve as the basis of a 10b–5 action under any theory." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1277 (D.C. Cir. 1994) (citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 374 (3d Cir. 1993)). Here, plaintiffs posit a duty to opine about the importance of a distributorship relationship—but "such characterization is a matter of judgment, not fact." *Issen v. GSC Enters.,* 508 F. Supp. 1278, 1290 (N.D. Ill. 1981). Omitting to include the speaker's judgment does not alter the *facts* available to investors, and thus fails to plead a misleading statement of fact.

That is particularly true where, as here, the purported omissions are indefinite and subjective statements. The relative importance of a distributor and its expected impact on RiT's viability are judgment calls. Courts have held in a variety of contexts that these sorts of statements

cannot form the basis of a fraud claim when affirmatively stated. *E.g.*, *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000) ("Material representations must be contrasted with statements of subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism, which constitute no more than "puffery" and are understood by reasonable investors as such." (internal quotation marks omitted)); *Burlington Coat Factory*, 114 F.3d at 1428 (statement about hope for continued earnings growth "too vague to be actionable"); *In re Hertz Glob. Holdings, Inc. Secs. Litig.*, No. CV 13-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) ("statements about 'strong' and 'record' financial results . . . constitute puffery" and fail to state a claim for securities fraud); *In re Milestone Sci. Secs. Litig.*, 103 F. Supp. 2d 425, 458 (D.N.J. 2000) (statement that company was "pleased" by order quantity and "expect[ed] even more orders" were "puffery" or "soft information.").

That is similarly true for Plaintiffs' argument that these indefinite characterizations were misleading by being omitted: simply adding vague adjectival characterizations would not change investors' assessment of the facts—particularly considering all the information about RiT CIS that *was* disclosed. In that context, it is implausible to allege that a few extra characterizations of RiT CIS would have "significantly altered" the factual mix available to the market. Plaintiffs' asserted omissions are thus immaterial as a matter of law.

**B.    Plaintiffs Fail To Plead Sufficient Facts to Create A Strong Inference of Scienter.**

Plaintiffs' claims independently fail because they do not meet the exacting requirements of the PSLRA to plead particularized facts giving rise to a strong inference of scienter, instead relying on boilerplate and asserting that RiT wanted to hide a relationship it had repeatedly publicly disclosed. "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or

defraud.'" *Tellabs,* 551 U.S. at 319. "[U]nder the PSLRA's exacting pleading standard for scienter, any private securities complaint alleging that the defendant made a false or misleading statement must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Institutional Inv'rs Grp.*, 564 F.3d at 253 (internal brackets, quotation marks, and ellipses omitted). Plaintiffs must "allege facts giving rise to a strong inference of either reckless or conscious behavior." *Id.* at 267 (internal quotation marks and footnote omitted).

To assess whether a plaintiff has met this requirement, courts must "weigh the plausible nonculpable explanations for the defendant's conduct against the inferences favoring the plaintiff." *Id.* (internal quotation marks omitted). "A strong inference of scienter is one that is cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* (internal quotation marks omitted). The court must reach a "practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is **at least as likely as not** that defendants acted with scienter." *Id.* at 269 (emphasis added).

Plaintiffs plead *no* particularized facts to support their assertions of intent to defraud as to the purported "major" or "vital" nature of RiT CIS. Instead, they offer boilerplate group pleading, asserting that because the individual defendants were officers or directors, they must have known about the "major" and "vital" status of RiT CIS. This is not enough. "As this court has noted on more than one occasion, corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) (quoted approvingly by 3d Cir. in *Avaya*).

The only other allegations Plaintiffs offer to attempt to meet their "exacting" burden is to speculate that hiding the extent of the company's financial dependence on its controlling shareholder gave RiT a motive to lie. It is well established that "conclusory allegations of motive and opportunity" do not suffice. *Synchronoss*, 705 F. Supp. 2d at 399. "[M]otive and opportunity like all other allegations of scienter must now be supported by facts stated 'with particularity' and must give rise to a 'strong inference' of scienter." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002) (internal quotation marks omitted). "Motive entails allegations that the individual corporate defendants stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures." *Id.* "Opportunity refers to the means and likely prospect of achieving such concrete benefits by the means alleged." *Id.* (internal quotation marks omitted).

Plaintiff's claims of motive are unparticularized and apply to any company that does business with its controlling shareholder. And even aside from that, they do not withstand the opposing inferences from facts that are quoted in the Complaint or judicially noticeable, such as the contents of RiT's securities filings. Even a cursory perusal of RiT's securities filings reveals repeated and detailed disclosures about RiT's relationship with Stins Coman. Those disclosures include referring to Stins Coman more than a hundred times in the Form 20-F alone and specifically identifying the Stins Coman controlling shareholder relationship as a risk factor. *See supra* at 4. That is hardly indicative of a plot to lie about RiT's relationship with Stins Coman. Plaintiff's speculation does not support *any* inference, let alone a strong inference that is more plausible than opposing inferences, of knowledge or recklessness regarding the purported omission of RiT CIS's supposed "major" and "vital" status.

### C.       Plaintiffs' Section 20(a) Claim Fails for Lack of an Underlying Violation.

Finally, Plaintiffs' section 20(a) claims require an underlying violation of the securities laws. "Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b)." *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). "[I]t is well-settled that controlling person liability is premised on an independent violation of the federal securities laws." *Rockefeller*, 311 F.3d at 211. "[O]nce all predicate § 10(b) claims are dismissed, there are no allegations upon which § 20(a) liability can be based." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992), *as amended* (May 27, 1992). Because Plaintiffs fail to state a predicate violation, their section 20(a) claims fail too.

### D.       Plaintiffs' Claims Should be Dismissed With Prejudice.

The dismissal of Plaintiffs' complaint should be with prejudice. It has been almost two years since this case was filed, two years in which Plaintiffs have had ample opportunity to further amend and supplement their allegations. After repeatedly stating that they intended to file an amended complaint, the entirety of the amendments Plaintiffs made was to add approximately two paragraphs of generalized and conclusory allegations of scienter.

Dismissal with prejudice is particularly appropriate because "[o]ne of Congress' objectives in enacting the PSLRA was to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 246 (3d Cir. 2004) (internal quotation marks omitted). "This objective would be frustrated where there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced which would, if true, cure the defects in the pleadings under the heightened requirements of the PSLRA." *Id.* (internal quotation marks omitted). Plaintiffs have had two years to offer more than unparticularized boilerplate, and have not done so. Without any

21

suggestion that they can plead additional facts to cure these defects, dismissal with prejudice is warranted.

**V.      CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiffs' complaint with prejudice.

Respectfully submitted,

Dated: New York, New York
      June 15, 2018

Kirkland & Ellis LLP

*s/ Sara B. Cannon*

Sara B. Cannon
sara.cannon@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900

*Attorney for Defendants Amit Mantsur;
Yossi Ben Harosh; Eran Erov; and Motti
Hania*

*Of Counsel:*

Jay P. Lefkowitz, P.C. (*pro hac vice*)
lefkowitz@kirkland.com
Nathaniel J. Kritzer (*pro hac vice*)
nathaniel.kritzer@kirkland.com
Joseph M. Sanderson (*pro hac vice*)
joseph.sanderson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900