## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

STEPHEN PADGETT, Individually and On Behalf Of All Others Similarly Situated,

           Plaintiff,

v.

RIT TECHNOLOGIES LTD., AMIT MANTSUR, YOSSI BEN HAROSH, ERAN EROV, and MOTTI HANIA,

           Defendants.

CASE NO. 16-cv-04579 (KM)(JBC)


**ORIGINALLY SCHEDULED MOTION RETURN DATE:  JULY 16, 2018**


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS AMIT MANTSUR, YOSSI BEN HAROSH, ERAN EROV, AND MOTTI HANIA

### <u>CONTENTS</u>

I.     **INTRODUCTION** ...................................................................................... **5**

II.    **BACKGROUND** ....................................................................................... **6**

III.   **LEGAL STANDARD** ............................................................................ **9**

IV.   **ARGUMENT** ......................................................................................... **10**

      A.      Defendants Misleadingly Failed to Completely and Accurately Disclose the Truth ...................................................................................... 10

      B.      The Pleaded Facts Create a Strong Inference of Scienter ..................................... 14

      C.      Plaintiffs' Section 20(a) Claim Pleads an Underlying Violation .......................... 15

V.     **CONCLUSION** .................................................................................... **15**

## TABLE OF AUTHORITIES

**Cases**

*Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.,*
   394 F.3d 126 (3d Cir. 2004) ................................................................................... 9

*In re Able Labs. Sec. Litig.,*
   No. 05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538 (D.N.J. Mar. 24, 2008) ........................... 13

*In re Aetna Inc. Sec. Litig.,*
   34 F. Supp. 2d 935 (E.D. Pa. 1999) ....................................................................... 10

*In re Bradley Pharms., Inc. Sec. Litig.,*
   No. 05-cv-1219, 2006 U.S. Dist. LEXIS 13738 (D.N.J. Mar. 23, 2006) ................................... 9

*In re Bristol-Myers Squibb Sec. Litig.,*
   No. 00-cv-1990, 2005 U.S. Dist. LEXIS 18448 (D.N.J. Aug. 17, 2005) ................................ 10

*In re Campbell Soup Co. Sec. Litig.,*
   145 F. Supp. 2d 574 (D.N.J. 2001) ........................................................................... 9

*In re CommVault Sys., Sec. Litig.,*
   No. 14-cv-5628 (PGS), 2016 U.S. Dist. LEXIS 135257 (D.N.J. Sep. 30, 2016) ..................... 14

*In re Dynavax Sec. Litig.,*
   No. 4:16-cv-06690-YGR, 2018 U.S. Dist. LEXIS 93831 (N.D. Cal. June 4, 2018) ............... 10

*In re Suprema Specialties, Inc. Sec. Litig.,*
   438 F.3d 256 (3d Cir. 2006) ................................................................................... 9

*Institutional Inv'rs Grp. v. Avaya, Inc.,*
   564 F.3d 242 (3d Cir. 2009) ............................................................................. 13, 14

*Novak v. Kasaks,*
   216 F.3d 300 (2d Cir. 2000) ................................................................................... 9

*Oran v. Stafford,*
   226 F.3d 275 (3d Cir. 2000) ................................................................................... 10

*Schueneman v. Arena Pharms., Inc.,*
   840 F.3d 698 (9th Cir. 2016) ................................................................................... 10

*South Ferry LP, No. 2 v. Killinger,*
   542 F.3d 776 (9th Cir. 2008) ................................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ......................................................................................... 8, 13

3

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) ............................................................................. 10

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................... 8

15 U.S.C. § 78u-4(b)(2) .............................................................................. 9, 13

15 U.S.C. § 78u-4(b)(1) ...................................................................................... 9

**Regulations**

17 C.F.R. § 240.10b-5 ....................................................................................... 10

## I.      INTRODUCTION

RiT Technologies ("RiT") and certain of its officers touted an agreement with RiT CIS Ltd. ("RiT CIS") to serve as a non-exclusive distributor of RiT's products in Russia and the Commonwealth of Independent States ("CIS").   While RiT disclosed that RiT CIS was an affiliate of its controlling shareholder, Stins Coman, RiT hid its reliance upon RiT CIS.   In particular, RiT did not disclose that RiT CIS was a major distributor for RiT in Russia and the CIS – indeed, its only major distributor in those regions – and that RiT's viability depended upon the distribution services of RiT CIS.

The reason and motive for RiT's misleading omission is obvious.  The market would welcome news of another distribution outlet in Russia and the CIS, notwithstanding the new distributor's affiliate relationship with RiT's controlling shareholder.  But the market would react very differently to an overdependence on a distributor affiliated with RiT's controlling shareholder.  This overdependence would allow both Stins Coman and RiT CIS to exercise influence over RiT to *their* benefit, even when not in the best interest of RiT.  To avoid an adverse market reaction, RiT and its officers informed the market of the ostensibly good news – that RiT had appointed a new, ***non-exclusive*** distributor in Russia and the CIS – while withholding adverse information that cut against the positive information – that RiT greatly depended upon this new distributorship and, in fact, its viability depended on the distributorship. Thus, Defendants did not simply provide incomplete information, as they now argue; Defendants provided misleading information.

Nor is there any real question that the facts pleaded by Plaintiffs show that RiT CIS was RiT's major distributor and vital to RiT's viability at the time of Defendants' misleading statements.  To suggest, as Defendants now do, that RiT's distributorship metamorphosed from

5

minor status to critical importance within such a short time – the last of Defendants' misleading statements was filed less than two months before the truth emerged – beggars belief.  Similarly, RiT's dependence on RiT CIS's distributorship is not a question of pejorative adjective or subjective judgment, as Defendants suggest.  When the distribution of a company's products relies upon a single distributor, which is an affiliate of the company's controlling shareholder, that dependence is material.

Finally, as pleaded in the Amended Complaint, the critical importance of RiT CIS's distributorship, along with its disclosed relationship with RiT's controlling shareholder, renders an inference of Defendants' knowledge or RiT CIS's undisclosed critical role is at least as likely as any other opposing inference.  As such, Plaintiffs have properly pleaded scienter.

## II.    BACKGROUND

RiT was a company providing intelligent infrastructure management and indoor optical wireless technology solutions.  Amended Complaint ("Compl.") ¶ 7.    The company was incorporated in Israel, but maintained offices in the United States and was listed on the NASDAQ exchange.  *Id.*  Defendant Yossi Ben Harosh ("Harosh") was the Chief Executive Officer ("CEO") and President of RiT from July 7, 2015 until his resignation on June 3, 2016. *Id.* ¶ 8.  Defendant Amit Mantsur ("Mantsur") was the Chief Financial Officer ("CFO") of RiT from August 6, 2015 until April 20, 2016.  *Id.* ¶ 9.  Defendant Eran Erov ("Erov") was RiT's VP of Finance from December 22, 2014.   *Id.* ¶ 10.   Defendant Motti Hania ("Hania") was the President and CEO of RiT from January 21, 2014 until July 7, 2015.  *Id.* ¶ 11.

On March 3, 2015, RiT filed a Form 6-K announcing that it had entered into an International Distributor Agreement with RiT CIS whereby "RiT CIS was granted a non-

exclusive right to distribute, sell, and/or maintain RiT Technologies' products in the territory of the Russian Federation and the CIS."[1]  Compl. ¶ 18.  The Form 6-K was signed by Erov.  *Id.*

On April 22, 2015, RiT filed a Form 20-F (the "2014 20-F"), which was signed by Hania. *Id.* ¶ 19.  The 2014 20-F also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hania and Erov attesting to the disclosure of all fraud.  *Id.*  The 2014 20-F referred to RiT CIS "as an additional non-exclusive distributor," stating in part:

> *[I]n 2015 we appointed RiT CIS Ltd., or RiT CIS*, a Russian company affiliated with Stins Coman, *as an additional non-exclusive distributor of our products in Russia and the CIS.*
>
> \*        \*        \*
>
> *Distributor Agreement with RiT CIS*. In efforts to realign and improve our sales in the CIS market, we entered into a Distributor Agreement dated January 6, 2015, with RiT CIS Ltd., a Russian company affiliated with Stins Coman ("RiT CIS"), *whereby we designated RiT CIS as our additional and non-exclusive distributor in said territory*….

*Id.* ¶ 20 (emphasis added).

On December 7, 2015, the Company issued a press release entitled "RiT Strengthens Its Contractual Networking in Russia and CIS" referring to RiT CIS as its "Distributor in Russia" and stating in relevant part:

> **RiT Strengthens Its Contractual Networking in Russia and CIS**
>
> *–RiT CIS Ltd., RiT's Russian Distributor, formed strategic alliance with several major Russian IT-Corporations*, expected to increase revenues in said region
>
> TEL AVIV, Israel, Dec. 7, 2015 (GLOBE NEWSWIRE) -- RiT Technologies (NASDAQ:RITT), a leading provider of Converged Infrastructure Management Solutions that enable companies to maximize utilization and security of their network infrastructure, announced today

---

[1] The CIS region includes Armenia, Belarus, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan.

> that *RiT CIS Ltd.-its Distributor in Russia ("RiT CIS"), had formed strategic alliance with several major IT- companies in Russia.*
>
> . . . .
>
> About RiT CIS
>
> *RIT CISLTD., is an official distributor of RiT Technologies, specializing in creating Converged Infrastructure Management Solutions and physical connections in Russia and CIS*. . . .

Compl. *Id.* ¶ 21 (emphasis added).

On December 14, 2015, the Company filed a Form 6-K with a copy of the December 7, 2015 press release attached as an exhibit.  Compl. ¶ 22.  The Form 6-K was signed by Mantsur. *Id.*

Less than two months later, on February 11, 2016, the Company issued a press release revealing that RiT CIS was "its major distributor in Russia and the CIS region" and was delaying payments to the Company, "thereby adversely impacting RiT's current cash flow."  Compl. ¶ 26. On this news, shares of RiT fell $0.60 per share or over 50% from its previous closing price to close at $0.59 per share on February 11, 2016.  *Id.* ¶ 27.

On April 20, 2016, RiT issued a press release announcing that the collection progress of its Russian distributor's overdue debts was progressing significantly slower than planned, and that RiT's CFO, Mantsur, resigned effective immediately.  Compl. ¶ 28.  The release also noted its requested $3 million loan from Stins Coman, under an existing loan agreement between the two parties, had not yet been fulfilled.  *Id.*  On this news, shares of RiT fell $0.32 per share or over 46% from its previous closing price to close at $0.37 per share on April 20, 2016.  *Id.* ¶ 29.

On May 10, 2016, RiT issued a press release announcing that it had made no progress in the collection of the overdue debts of RiT CIS.  Compl. ¶ 30.  The release noted, again, that its requested $3 million loan from Stins Coman and that there was "substantial doubt as to the

fulfillment of said loan request." *Id.*  On this news, shares of RiT fell $0.04 per share or over

12% from its previous closing price to close at $0.30 per share on May 10, 2016.  *Id.* ¶ 31.

On May 23, 2016, the Company issued a press release announcing that no progress was

made on the collection of the overdue debts of its Russian distributor, RiT CIS, and "the

Company believes that there is a substantial doubt about its ability to continue its operations as a

going concern."  Compl. ¶ 32.

On June 28, 2016, RiT issued a press release announcing that trading of its securities

would be suspended by NASDAQ on July 1, 2016 and thereafter be removed from listing on the

NASDAQ.  Compl. ¶ 35.  On this news, shares of RiT Technologies fell $0.07 per share or over

32% from its previous closing price to close at $0.15 per share on June 28, 2016.  *Id.* ¶ 36.

Lead Plaintiffs Martin Smilovich and Hershel Smilovich purchased RiT securities

between March 3, 2015 and July 1, 2016, both dates inclusive (the "Class Period") and suffered

losses.  Compl. ¶ 6.

## III.    LEGAL STANDARD

When considering a motion to dismiss, the Court must "accept all factual allegations in

the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Section 10(b) of the Securities Exchange Act of 1934 prohibits the "use or employ[ment], in

connection with the purchase or sale of any security …, [of] any manipulative or deceptive

device or contrivance in contravention of such rules and regulations as the Commission may

prescribe."  15 U.S.C. § 78j(b).  The elements of a Section 10(b)/Rule 10b-5 claim are: "(1) a

material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a

connection with the purchase or sale of a security; (4) reliance, often referred to in cases

involving public securities market (fraud-on-the-market cases) as 'transaction causation;' (5)

economic loss; and (6) 'loss causation,' *i.e.*, a causal connection between the material misrepresentation and the loss." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 275 (3d Cir. 2006).

A complaint alleging violations of Section 10(b) and Rule 10b-5 must meet the pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). "Under the PSLRA, the complaint must (1) 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed,' and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *In re Bradley Pharms., Inc. Sec. Litig.*, No. 05-cv-1219, 2006 U.S. Dist. LEXIS 13738, at *9-10 (D.N.J. Mar. 23, 2006) (quoting PSLRA, 15 U.S.C. §§ 78u-4(b)(1) & (b)(2)).

However, Fed. R. Civ. P. 9(b) and the PSLRA require only that plaintiffs plead sufficient facts, not detailed evidence, especially when the factual information is within the defendants' knowledge or control. *See, e.g.*, *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 593 (D.N.J. 2001) (plaintiffs not required to plead various evidentiary details); *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 146 (3d Cir. 2004) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)) (the PSLRA does "not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based").

## IV.    ARGUMENT

### A. Defendants Misleadingly Failed to Completely and Accurately Disclose the Truth

Throughout the Class Period, Defendants issued a series of fraudulent material misrepresentations regarding the nature of RiT's relationship with RiT CIS.  Defendants'

disclosures omitted material information about RiT's dependence upon RiT CIS, causing their statements to be misleadingly incomplete.  In doing so, Defendants violated the federal securities laws.

SEC Rule 10b-5 makes it unlawful to "omit to state a material fact in order to make the statements made … not misleading." 17 C.F.R. § 240.10b-5.  A duty to disclose exists in the presence of "an inaccurate, incomplete or misleading prior disclosure." *Oran v. Stafford*, 226 F.3d 275, 285-286 (3d Cir. 2000).   "Once a company has chosen to speak on an issue – even an issue it had no independent obligation to address – it cannot omit material facts related to that issue so as to make its disclosure misleading." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241 (3d Cir. 2017); *see also In re Aetna Inc. Sec. Litig.,* 34 F. Supp. 2d 935, 948 (E.D. Pa. 1999) ("[t]here is a duty to disclose information when disclosure is necessary to make defendants' other statements, whether mandatory or volunteered, not misleading").  Likewise, "'once defendants cho[o]se to tout' positive information to the market, 'they [are] bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information." *In re Dynavax Sec. Litig.*, No. 4:16-cv-06690-YGR, 2018 U.S. Dist. LEXIS 93831, at *15 (N.D. Cal. June 4, 2018) (quoting *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016)); *see also In re Bristol-Myers Squibb Sec. Litig.*, No. 00-cv-1990, 2005 U.S. Dist. LEXIS 18448, at *63-64 (D.N.J. Aug. 17, 2005) ("even an objectively true statement, if it leaves out material information may be actionable").

During the Class Period, Defendants repeatedly touted and referenced RiT CIS's agreement to serve as a non-exclusive distributor of RiT's products in Russia and the CIS.  But Defendants failed to disclose that RiT CIS was RiT's major distributor in Russia and the CIS –

its only major distributor in those areas – and that RiT's viability depended upon the distribution services of RiT CIS.

Of course, as Defendants now argue, RiT disclosed RiT CIS was an affiliate of its controlling shareholder, Stins Coman, but Defendants' contention misses the point.   In its disclosures, RiT hid its dependence upon RiT CIS *precisely because* the latter's relationship with Stins Coman was well known.   The market welcomed news of another distributor in Russia and the CIS, notwithstanding the new distributor's affiliate relationship with RiT's controlling shareholder.    The market shrugged off RiT's cautionary note that this non-exclusive distributorship could increase Stins Coman's influence over RiT, because the company's disclosure misleadingly indicated that RiT CIS was not a significant distributor.

But the market would have reacted very differently to an excessive reliance on a distributor affiliated with RiT's controlling shareholder.   RiT's excessive reliance on RiT CIS would allow both RiT CIS and Stins Coman to exercise influence over RiT's affairs for their own benefit, even when to the detriment of RiT.    Accordingly, RiT and its officers touted the supposedly good news – that RiT had appointed a new, *non-exclusive* distributor in Russia and the CIS – while withholding adverse information that cut against the positive information – that RiT greatly depended upon this new distributorship and its viability depended on the distributorship.   When viewed in context – including the frequent disclosures about RiT CIS's relationship with Stins Coman – Defendants did not simply provide incomplete information, as they now argue; Defendants provided misleading information.

Nor can it be doubted that that the facts pleaded by Plaintiffs show that RiT CIS was RiT's major distributor and vital to RiT's viability at the time of Defendants' misleading statements.   Defendant's statements from March 3, 2015 through December 14, 2015

misleadingly omitted the importance of RiT CIS's distributorship.  Indeed, as Defendants now suggest, those statements do not indicate that RiT CIS was anything more than a minor distributor.  Only a few weeks after Defendants' last misleading statement, RiT revealed that RiT CIS was "its major distributor in Russia and the CIS region" and was delaying payments to RiT, "thereby adversely impacting RiT's current cash flow."  Yet Defendants would have this Court believe that within less than two months from the last misleading statement, RiT CIS's distributorship transformed from minor status to critical importance.  This spin on the publicly revealed facts is not plausible, to say the least.  The most plausible understanding of the pleaded facts is that, at the time of Defendants' misleading statements, RiT CIS's distributorship was not of minor significance; on the contrary, at the time of Defendants' statements, RiT CIS was a major distributor – indeed, RiT's only major distributor in Russia and the CIS – and critical to the survival of the company.

Finally, in their motion papers, Defendants suggest that RiT CIS's status as RiT's "major distributor" and "vital" to the company's viability was not material, since it consists of mere characterization and judgment.  But there is no basis in law or fact for this argument.  To be sure, Defendants were not required to use those very words – though "major distributor" is the phrase they chose to use when they eventually began to disclose the truth – but Defendants were required to disclose, in some verbal form, RiT's dependence upon RiT CIS's distributorship. This dependence was not simply a pejorative adjective or a matter of judgment; it was a factual matter.  When much of a company's products are distributed by a single distributor, which is an affiliate of the company's controlling shareholder, that dependence – however described – is material.

Accordingly, by failing to disclose this material information, Defendants provided misleading information.

### B.  The Pleaded Facts Create a Strong Inference of Scienter

For a claim under Section 10(b), a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009) (quoting 15 U.S.C. § 78u-4(b)(2)). To establish that "strong inference," a plaintiff "must plead facts rendering an inference of scienter at least as likely as any other plausible opposing inference." *In re Able Labs. Sec. Litig.*, No. 05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538, at *52-53 (D.N.J. Mar. 24, 2008) (quoting *Tellabs*, 551 U.S. at 238).  In particular:

> The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking gun" genre, or even the "most plausible of competing inferences."  Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward.  Yet the inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations.  A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Tellabs*, 551 U.S. at 324 (citations omitted).

As a result of the Supreme Court's instruction to view the facts alleged in the complaint holistically, the Third Circuit concluded that:

> Given this instruction, we are hesitant to formulate categorical rules about the sufficiency of different types of allegations in the abstract.  Each case will present a different configuration of factual allegations, and it is the composite picture, not the isolated components, that judges must evaluate in the last instance. "In assessing the allegations holistically as required by Tellabs, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective."

14

*Avaya*, 564 F.3d at 272-73 (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)) (emphasis added).

Here, the question is whether the pleaded facts give rise to strong inference that Defendants, when disclosing that RiT CIS was a non-exclusive distributor for RiT in Russia and the CIS, knew that RiT CIS was a major distributor in those areas and vital to the viability of RiT CIS.  Give the critical importance of RiT CIS's distributorship, as pleaded by Plaintiffs, an inference of Defendants' knowledge is at least as likely as any other plausible opposing inference.  *See In re CommVault Sys., Sec. Litig.*, No. 14-cv-5628 (PGS), 2016 U.S. Dist. LEXIS 135257, at *28 (D.N.J. Sep. 30, 2016) ("[T]he fact that the allegations of fraud pertain the [the company's] core business . . . may impute knowledge on the Defendants.").  As noted above, RiT's eventual disclosure of the truth indicated not only that RiT CIS was *a* major distributor for RiT in Russia and the CIS, but also that RiT CIS was RiT's ***only*** major distributor in Russia and the CIS.  The critical nature of RiT CIS's distributorship, coupled with its disclosed relationship with RiT's controlling shareholder, renders an inference of Defendants' ignorance implausible; but, in any event, an inference of Defendants' knowledge is at least as likely.

### C.  Plaintiffs' Section 20(a) Claim Pleads an Underlying Violation

As set forth above, Plaintiffs plead an underlying violation of the securities laws. Accordingly, their section 20(a) claim must be sustained.

### V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss the Amended Complaint.[2]

---

[2] This motion to dismiss is brought only by the individual defendants: Arnit Mantsur, Yossi Ben Harosh, Eran Erov, and Motti Hania.  Defendant RiT Technologies has not answered or responded to the Amended Complaint.

Dated: August 14, 2018                    Respectfully submitted,

                                          */s        Neil Grossman        *
                                          Neil Grossman

                                          Bronstein, Gewirtz & Grossman, Esqs.
                                          144 North Beverwyck Road, #187
                                          Lake Hiawatha, NJ 07034
                                          973-335-6409
                                          neil@bgandg.com

                                          *Lead Counsel for Lead Plaintiffs*