UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN PADGETT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RIT TECHNOLOGIES LTD., AMIT MANTSUR, YOSSI BEN HAROSH, ERAN EROV, and MOTTI HANIA,<br><br>Defendants. | Civ. No. 16-4579 (KM) (JBC)<br><br>**MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The Amended Complaint in this putative class action asserts claims under the federal securities laws against senior officers of RiT Technologies Ltd. ("RiT" or "the Company"), as well as the Company itself. (*See* AC).[1] The claims arise from allegedly false or materially misleading statements made by the Defendants in press releases and public filings with the Securities and

---

[1] For ease of reference, certain items from the docket will be abbreviated as follows:

| | |
|---|---|
| "DE __" = | Docket Entry in this case |
| "AC" = | Amended Complaint (DE 23) |
| "Def. Mot." = | Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint (DE 28-1) |
| "Pl. Opp." = | Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss the Amended Complaint (DE 32) |
| "Def. Reply" = | Defendants' Reply Brief to Plaintiffs' Opposition (DE 33) |
| "2014 20-F" = | RiT's SEC Form 20-F for the Fiscal Year Ended 2014, dated April 22, 2015 (DE 28-4) |
| "2015 6-K" = | RiT's SEC Form 6-K, dated March 3, 2015 (DE 28-3) |

1

Exchange Commission ("SEC"). Plaintiffs assert that these false and materially misleading statements violate Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

Now before the Court is the Defendants' motion to dismiss the Amended Complaint. For the reasons expressed herein, the Defendants' motion is GRANTED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

The crux of Plaintiffs' claims is that Defendants materially misled investors by failing to disclose the full extent of RiT's reliance on an agreement with RiT CIS Ltd. ("RiT CIS"). That agreement provided that RiT CIS was a non-exclusive distributor of RiT products and services in the Commonwealth of Independent States region (hereinafter, "CIS"[3]). The language RiT used to describe this agreement, though accurate, is alleged to have been deceptively incomplete.

### a. Relevant Parties and Participants

Defendant RiT is an Israeli-based company that provides intelligent infrastructure management and indoor optical wireless technology solutions to enhance security and network utilization for workspace environments. (AC ¶ 7). RiT maintains offices in Ridgewood, New Jersey. (*Id.*). RiT's shares traded

---

[2]   On a Rule 12(b)(6) motion to dismiss the complaint, I accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Pension Tr. Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 268 (3d Cir. 2013). *See* Section II, *infra*.

The Plaintiffs quote from and rely upon RiT's SEC filings in their Amended Complaint. These filings are incorporated by reference in the Amended Complaint and are properly before the Court on a motion to dismiss. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). At any rate, in a securities action, the contents of a company's public SEC filings are properly subject to judicial notice for the purpose of showing the information disclosed therein. *Id.*

[3]   The Commonwealth of Independent States includes Armenia, Belarus, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan. (AC ¶ 17).

2

publicly on the NASDAQ Capital Market exchange until the issue was delisted on July 1, 2016. (AC ¶¶ 7, 35).

Defendant Yossi Ben Harosh was the CEO and president of RiT from July 7, 2015 until his resignation on June 3, 2016. (AC ¶ 8). Defendant Amit Mantsur was the CFO of RiT from August 6, 2015 until April 20, 2016. (AC ¶ 9). Defendant Eran Erov has been RiT's vice president of finance since December 22, 2014. (AC ¶ 10). Defendant Motti Hania was the CEO and president of RiT from January 21, 2014 until July 7, 2015. (AC ¶ 11).

Martin and Hershel Smilovich are the Co-Lead Plaintiffs of a putative class consisting of all persons other than Defendants who purchased or otherwise acquired RiT securities between March 3, 2015 and July 1, 2016 (the "Class Period"). (AC ¶¶ 1, 6). Martin and Hershel Smilovich purchased RiT securities during the Class Period. (*Id.*).

### b. Procedural History

The original complaint, filed on July 28, 2016, named Stephen Padgett as the Lead Plaintiff. (DE 1). Padgett withdrew his motion to be Lead Plaintiff after it became apparent that others had a larger financial interest in the outcome of the case. (DE 5 through 10). Thereafter the Court approved the appointment of Martin and Hershel Smilovich as Co-Lead Plaintiffs. The Smiloviches then filed an Amended Complaint, which is the currently operative pleading and the subject of the Defendants' current motion to dismiss. (DE 11, 23, 28).

### c. Substantive Factual Allegations

On March 3, 2015, RiT filed a Form 6-K with the SEC ("2015 6-K") announcing that it had entered into an International Distributor Agreement with RiT CIS, dated January 6, 2015. (AC ¶ 18). The 2015 6-K explained that "RiT CIS was granted a non-exclusive right to distribute, sell, and/or maintain RiT's products in the territory of the Russian Federation and the CIS." (AC ¶ 18 (quoting 2015 6-K at 2)). RiT's stated goal in entering into this contract with a

3

new distributor was to realign and improve its sales in the CIS countries. (2015 6-K at 2).

The 2015 6-K, which was signed by Defendant Erov, stated explicitly that RiT CIS is a Russian company affiliated with RiT's controlling shareholder, Stins Coman Incorporated. (*Id.*). A copy of the Distributor Agreement was attached to the 2015 6-K that RiT filed with the SEC. (*Id.*; AC ¶ 18).

On April 22, 2015, RiT filed with the SEC a Form 20-F for the 2014 fiscal year ("2014 20-F"),[4] signed by Defendant Hania. (AC ¶ 19). In the 2014 20-F, Defendants Hania and Erov signed certifications pursuant to the Sarbanes-Oxley Act of 2002 attesting to the disclosure of all fraud. (*Id.*). The 2014 20-F referred to RiT CIS as an additional non-exclusive distributor, stating in part the following:

> [I]n 2015 we appointed RiT CIS Ltd., or Rit CIS, a Russian company affiliated with Stins Coman, as an additional non-exclusive distributor of our products in Russia and the CIS.
>
> . . .
>
> **Recent Major Business Developments**
>
> Below is a summary of the major business developments in RiT since January 1, 2014:
>
> *Distributor Agreement with RiT CIS.* In efforts to realign and improve our sales in the CIS market, we entered into a Distributor Agreement dated January 6, 2015, with RiT CIS Ltd., a Russian company affiliated with Stins Coman ("RiT CIS"), whereby we designated RiT CIS as our additional and non-exclusive distributor in said territory (See "Item 7.B – Related Party Transactions" below).

(AC ¶ 20; 2014 20-F at 15). The 2014 20-F disclosed that Stins Coman beneficially owned a majority of RiT's ordinary shares and that some members of RiT's Board of Directors were affiliated with Stins Coman. (2014 20-F at 10).

On December 7, 2015, RiT issued a press release entitled "RiT Strengthens Its Contractual Networking in Russia and CIS." The press release referred to RiT CIS as RiT's "Distributor in Russia" and stated the following:

---

[4]    Note, however, that the "2014" 20-F was actually filed one month after the 2015 6-K.

4

> [RiT] announced today that RiT CIS Ltd.-its distributor in Russia ("RiT CIS"), had formed [a] strategic alliance with several major IT-companies in Russia.
>
> . . .
>
> RIT CIS LTD., is an official distributor of RiT Technologies, specializing in creating Converged Infrastructure Management Solutions and physical connections in Russia and CIS.

(AC ¶ 21). A copy of this December 7, 2015 press release was included with the Form 6-K that RiT filed with the SEC on December 14, 2015, which was signed by Defendant Mantsur. (AC ¶ 22).

### d. Plaintiffs' Legal Claims

Plaintiffs allege that the public statements referred above were materially false or misleading because they failed to disclose that: (1) RiT CIS was RiT's *major* distributor in Russia and the CIS region; and (2) RiT CIS was vital to the viability of RiT. (AC ¶ 23). Those omissions, which downplayed the significance of the Distributor Agreement with RiT CIS, also allegedly concealed the full extent of RiT's dependence on Stins Coman. (AC ¶ 24).

With respect to scienter, the Plaintiffs allege that "[g]iven RiT CIS's importance for the Company's continued viability, the Individual Defendants were aware of both RiT CIS's status as the Company's major distributor in Russia and the CIS region and RiT CIS's indispensability for the Company's viability." (AC ¶ 25). In other words, the defendants acted with scienter because they allegedly knew the public statements were materially misleading when they participated in the dissemination of those statements. (AC ¶ 53).

### e. Alleged Corrective Disclosures

Plaintiffs allege that throughout 2016 RiT progressively revealed the true nature of RiT's relationship with RiT CIS. (AC ¶¶ 26-39). On February 11, 2016, RiT issued a press release that described RiT CIS as "its major distributor in Russia and the CIS region" and stated that RiT was delaying payments to RiT, adversely impacting RiT's cash flow. (AC ¶ 26). On this news, shares of RiT Technologies fell $0.60 per share, a drop of approximately 50% from the previous closing price. (AC ¶ 27).

5

On April 20, 2016, RiT issued a press release announcing that the collection of the overdue debts from RiT CIS was progressing more slowly than planned, and that Defendant Mantsur, the CFO of RiT, was resigning. (AC ¶ 28). On this news, shares of RiT fell $0.32, a drop of approximately 46% from the previous closing price. (AC ¶ 29).

On May 10, 2016, RiT issued another press release announcing that it had not made any further progress in collecting the overdue debt from RiT CIS. (AC ¶ 30). On this news, shares of RiT fell $0.04 per share, a drop of approximately 12% from the previous closing price. (AC ¶ 31).

The Amended Complaint also notes press releases from later in 2016 which expressed doubt about RiT's ability to continue its operations as a going concern (AC ¶ 32), disclosed the resignation of its president and CEO, Defendant Harosh (AC ¶ 33), stated that it was delisted from trading on the NASDAQ (AC ¶ 35), and revealed that a group of RiT's employees had filed petitions with the Tel Aviv District Court to liquidate the Company (AC ¶ 37).

### f. The Exchange Act Claims

Count I asserts claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against RiT and the individual Defendants. (AC ¶¶ 49-58). Count II asserts controlling person liability under Section 20(a) against the individual Defendants only.[5] (AC ¶¶ 59-64). Plaintiffs allege that the Defendants disseminated or approved the allegedly false statements described above, knowing that they were misleading.

---

[5] The individual Defendants brought the current motion to dismiss. RiT, as an entity, has not appeared in this case, and *a fortiori*, has not joined in this motion to dismiss. It is an open question whether RiT was properly served. (See Def. Reply at 2, 9). RiT is named only in Count I, the allegations of which do not distinguish between the individual Defendants and RiT. I therefore exercise my discretion to dismiss the Amended Complaint in its entirety as to all Defendants, including non-moving Defendant RiT. *See Eun Ju Song v. Bank of Am., N.A.*, No. 14-3204 (WJM), 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015).

6

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Claims under the Exchange Act are covered by the Private Securities Litigation Reform Act ("PSLRA"), 109 Stat. 737, which requires heightened pleading standards beyond those of Rule 12(b)(6). *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 337 (S.D.N.Y. 2003). Under the PSLRA pleading requirements, a Section 10(b) claim must (i) "specify each statement alleged to have been misleading, the reason or reasons why the statement is

7

misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"; and (ii) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b); *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240–41 (3d Cir. 2017).

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

### III. ANALYSIS

#### a. Section 10(b) of the Exchange Act and SEC Rule 10b-5(b)

To allege a viable Section 10(b) claim, a plaintiff must plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014); *In re Hertz Glob. Holdings Inc*, 905 F.3d 106, 114 (3d Cir. 2018). Such a claim is subject to the heightened pleading standards imposed by the PSLRA. *In re Hertz Glob. Holdings Inc*, 905 F.3d at 114.

Defendants argue that the Plaintiffs have failed to sufficiently plead the first and second elements. I agree.

#### i. Material Misrepresentation or Omission

A statement or omission is materially misleading if "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *Basic v. Levinson*, 485 U.S. 224, 231–32 (1988)); *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 129 (3d Cir. 2017).

Courts considering motions to dismiss have often observed that materiality is a fact-specific issue. *See In re Adams Golf, Inc. Sec. Litig.*, 381

8

F.3d 267, 274 (3d Cir. 2004) ("Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal."). However, "if the alleged misrepresentations or omissions are so *obviously unimportant* to an investor that reasonable minds cannot differ on the question of materiality it is appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Adams Golf*, 381 F.3d at 275 (internal quotations omitted) (emphasis in original). Moreover, in order for a statement to be misleading, "it is not enough to allege that the statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement *affirmatively led the plaintiff in a wrong direction* (rather than merely omitted to discuss certain matters)." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 419–20 (D.N.J. 2010) ("[T]he burden of factual assertion establishing such 'misleading type' of incompleteness rests with the plaintiff.") (emphasis in original).

    The misrepresentations and omissions alleged in the Amended Complaint are either so obviously unimportant to an investor that reasonable minds could not differ on the question of materiality, or are not actually misleading at all, because they would not affirmatively lead investors in the wrong direction as of a result of their incompleteness. The materiality allegations boil down to two main contentions: (1) Defendants did not adequately describe the nature of RiT's Distribution Agreement with RiT CIS; and (2) Defendants did not adequately describe RiT's overall reliance on RiT CIS (and, by extension, Stins Coman). The Amended Complaint is vague as to the misimpression that was created, and how it would have affected an investment decision. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("In order to survive a motion to dismiss under the heightened pleading standards of the [PLSRA], the plaintiffs' complaint must specify the reason or reasons why the statements made by [the defendants] were misleading.").

As to the SEC filings' description of the Distribution Agreement, the Amended Complaint alleges that the "truth [ ] emerge[d]" only in RiT's February 11, 2016 press release, which described RiT CIS as its "major distributor" in the CIS region (AC ¶¶ 20, 26). The implication is that earlier public statements, which described RiT CIS as "an additional non-exclusive distributor," must have concealed RiT CIS's true status as RiT's "major" distributor. (*Id.*)

Failure to use a particular adjective or form of words does not equate to an actionable misrepresentation. The Amended Complaint does not allege *why* or *how* the description of the Distribution Agreement in the March-April 2015 SEC disclosures would have misled them to their detriment. An actual copy of the Distribution Agreement was filed with the 2015 6-K. It was of course *true* that RiT CIS was an additional distributor and that the Distribution Agreement was non-exclusive. Would it have made a difference if the disclosures in March-April 2015 had used the word "major"? Would such a disclosure even have been truthful at the time? (It is entirely possible that a fledgling distributor in April 2015 had *become* a major distributor by February 2016. The March-April 2015 disclosures, remember, were announcing the recent inking of a distributorship agreement.) The Amended Complaint is silent.

The Plaintiffs seem to be saying that this important distributorship was slipped past the investors as if it were an unimportant detail, because the statements did not use the words "major distributor." As Defendants accurately point out, however, RiT's March-April 2015 public statements actually did describe the signing of the Distribution Agreement as a "major" development.

For example, in RiT's 2014 20-F, identified in the Amended Complaint as one of the main deceptive pronouncements, the description of the RiT CIS Distribution Agreement is under the heading "Recent *Major* Business Developments." The prefatory sentence is to the same effect: "Below is a summary of the *major* business developments in RiT since January 1, 2014." (2014 20-F at 15) (emphasis added). A reasonable investor would necessarily

read the 2014 20-F disclosure of the distribution agreement as a "major" development.

As to the related allegation that RiT concealed that RiT CIS was vital to its operations, Plaintiffs do not set out any non-conclusory facts. Plaintiffs imply that the description of RiT CIS as an *additional* distributor and a non-exclusive one, though accurate, nevertheless misled investors. They do not, however, plead any facts in support of that inference. There are no allegations about the nature or size of RiT's other distributors, within or outside of the CIS region. There are no allegations about the amount of business the RiT CIS Distribution Agreement totaled, or was anticipated to total, in relation to other distributors. There are no allegations that RiT CIS, although billed as a nonexclusive distributor, was *de facto* an exclusive one. Nor does the Amended Complaint quantify or explain the importance to an investor of RiT CIS being (or not being) the largest CIS distributor among a group of smaller ones, even assuming that is true.

The Amended Complaint alleges that Defendants were trying to conceal their reliance on related-party transactions that involved Stins Coman. However, the public documents cited by Plaintiffs in their Amended Complaint repeatedly disclose that Stins Coman was a related party, and specify in detail its status as the controlling shareholder of RiT. (2014 20-F at 10, 15; 2015 6-K at 2.). The allegedly omitted details would not have altered the total mix of information to a reasonable investor who already knew about RiT's relationship to Stins Coman and was furnished an actual copy of the Distribution Agreement, which was filed with the 2015 6-K.

All in all, the Amended Complaint fails to plead sufficient facts to support an actionable inference that the March-April 2015 SEC disclosures were misleading in the sense of significantly altering the mix of information available to the investor. Consequently, the motion to dismiss the Exchange Act Section 10(b) and Rule 10(b)-5 claim for failure to plead materiality is granted.

### ii. Scienter Element

Defendants assert that the Amended Complaint does not plead the strong inference of scienter necessary to survive a motion to dismiss. To adequately plead scienter under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). That state of mind the Third Circuit has "described as one 'embracing [an] intent to deceive, manipulate, or defraud,' either knowingly or recklessly." *In re Hertz Glob. Holdings Inc*, 905 F.3d at 114 (quoting *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)).

A strong inference of scienter is pled "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499 (2007). That is not to say, however, that a plaintiff must "come forward with 'smoking-gun' evidence to meet the PSLRA's pleading requirements." *In re Hertz Glob. Holdings Inc*, 905 F.3d at 114. "Rather, in conducting the scienter analysis, courts must analyze the complaint holistically to determine whether its allegations, 'taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *Id.* at 323, 127 S. Ct. 2499. "'In assessing the allegations holistically as required by *Tellabs*, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective.'" *Avaya*, 564 F.3d at 272–73 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)).

Here, the allegations of scienter are bare and do not support a strong inference that Defendants acted with the required state of mind. The inference of scienter allegedly arises because Defendants were aware of "RiT CIS's importance for the Company's continued viability" and "knew that the public documents and statements. . . were materially false and misleading." (AC ¶¶

12

25, 53). As discussed above, the Plaintiffs have not alleged non-conclusory facts to support an inference that its relationship with RiT CIS was necessary for RiT's "continued viability."

Moreover, the Plaintiffs appear to be relying on their assertions of materiality, already found inadequate, *supra*, to support an inference of scienter. The argument seems to be that those statements were so clearly false and misleading that they could not have been uttered without intent to defraud. I disagree; failure to use the word "major," for example, does not scream fraud. These sorts of "conclusory allegations of motive and opportunity" and "stating that 'the defendant must have known'" do not satisfy the PLSRA's heightened standards. *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 399 (D.N.J. 2010) ("The inference [of scienter] may be made only when the fact pattern *unambiguously indicates* that the defendant was acting with the requisite state of mind.") (emphasis in original).

The discussion of materiality, *supra*, applies here as well. *See Avaya*, 564 F.3d at 263 ("The PSLRA imposes a particularity requirement on all allegations, whether they are offered in support of a statement's falsity or of a defendant's scienter."). Even assuming that scienter *could* be concluded from the facts as pled in the Amended Complaint, an alternative plausible inference is that the Defendants believed that their public statements accurately reflected the facts when they were filed in March-April 2015. The Distribution Agreement itself was included with RiT's public filings, it was described as a "major business development," and the nature of the Stins Coman relationship was disclosed. Under the *Tellabs* standard, the allegation of scienter fails because there are nonculpable inferences that are at least as compelling as the inference that Defendants acted with scienter. *Tellabs*, 551 U.S. at 324; *Avaya*, 564 F.3d at 269 (finding scienter requires "a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter.").

Ultimately, the scienter analysis is "case specific" and should "rest not on the presence or absence of certain types of allegations but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter." *Avaya*, 564 F.3d at 269. "The pertinent question is 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *Id.* at 267–68 (quoting *Tellabs*, 127 S. Ct. at 2509).

Considering the alleged facts holistically, I do not find that the allegations in the Amended Complaint satisfy the PSLRA requirement that there be a strong inference that the Defendants acted with scienter. Consequently, Defendants' motion to dismiss, to the extent it is based on failure to plead scienter, is granted.

### b. Section 20(a) of the Exchange Act

Count II alleges a claim of control-person liability under Section 20(a) of the Exchange Act. (AC ¶¶ 59-64). Section 20(a) "creates secondary liability for those determined to be 'control persons' of a corporation." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 642 (D.N.J. 2002). That Section provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of" the Exchange Act will be held jointly and severally liable. 15 U.S. Code § 78t; *see SEC v. J.W. Barclay & Co.*, 442 F.3d 834, 844 n.15 (3d Cir. 2006).

In order to prove control person liability, plaintiffs "must allege: (1) an underlying primary violation by a controlled person or entity; (2) that Defendants exercised control over the primary violator; and (3) that the Defendants, as 'controlling persons,' were in some meaningful sense culpable participants in the fraud." *Wilson*, 195 F. Supp. 2d at 642 (D.N.J. 2002) (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *In re Party City Securities Litig.*, 147 F. Supp. 2d 282, 317 (D.N.J. 2001)).

Section 20(a) liability depends on there being an underlying violation of the Exchange Act. *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014); *In re Toronto-Dominion Bank Sec. Litig.*, No. 17-1665, 2018 WL 6381882, at *4 (D.N.J. Dec. 6, 2018); *cf. City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (granting motion to dismiss because "without 'a primary violation of federal securities law,' Plaintiff cannot establish control person liability."). Because the Plaintiffs have failed to plead such a violation, *see supra,* the Section 20(a) claim is correspondingly insufficient and is dismissed.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. Because this is an initial dismissal, it is without prejudice to the filing of a properly supported motion to amend within 45 days.

An appropriate Order follows.

Dated: February 22, 2019

                                                                                    _Kevin McNulty_
                                                                                    **HON. KEVIN MCNULTY, U.S.D.J.**