**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
(973) 776-7700

CHAMBERS OF
**JAMES B. CLARK, III**
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
50 WALNUT STREET, ROOM 2060
NEWARK, NJ 07102

November 25, 2019

**LETTER ORDER**

Re: <u>Padgett v. RiT Technologies LTD, et al.</u>
    Civil Action No. 16-4579 (KM)

Dear Counsel:

Presently before the Court is a motion by Plaintiffs Martin and Hershel Smilovich (collectively "Plaintiffs") for leave to file a Second Amended Complaint [Dkt. No. 39]. Defendants Amit Mantsur, Yossi Ben Harosh, Eran Erov and Motti Hania (collectively "Defendants"[1]) oppose Plaintiffs' motion [Dkt. No. 40]. For the reasons set forth below, Plaintiffs' motion to amend [Dkt. No. 39] is **DENIED**.

The proposed Second Amended Complaint in this putative class action asserts claims under the federal securities laws against the individual Defendants, as senior officers of RiT, and RiT itself, arising from allegedly false or materially misleading statements made by Defendants in press releases and public filings with the Securities and Exchange Commission (the "SEC").[2] Plaintiffs claim that the allegedly

---

[1] As to Defendant Rit Technologies Ltd. ("RiT" or "the Company"), the Court noted in its Opinion granting Defendants' prior motion to dismiss that "RiT, as an entity, has not appeared in this case" and it is "an open question whether RiT was properly served." Dkt. No. 34 at n. 5. Although RiT did not join in the individual Defendants' previous motion to dismiss, the Court, finding that RiT was named only in Count I of the Amended Complaint and that the allegations related to RiT did "not distinguish between the individual Defendants and RiT," exercised its discretion to dismiss the Amended Complaint in its entirety as to all Defendants, including RiT. Although Count I of Plaintiff's proposed Second Amended Complaint continues to include allegations against RiT, RiT has still not appeared in this matter and there is no indication that RiT has been served.

[2] This Order includes only the background of this matter as relevant to the present motion. A more thorough recitation may be found in the Court's February 22, 2019 Opinion granting Defendants' motion to dismiss the Amended Complaint [Dkt. No. 34].

false and materially misleading statements made by Defendants violate Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

RiT is an Israeli-based company that provides intelligent infrastructure management and indoor optical wireless technology solutions to enhance security and network utilization for workspace environments. RiT's shares traded publicly on the NASDAQ Capital Market exchange until the issue was delisted on July 1, 2016. RiT CIS Ltd. ("RiT CIS") was a distributer of RiT products and services in the Commonwealth of Independent States region ("CIS"[3]). Plaintiffs' claims in this matter arise from Plaintiffs' contention that Defendants materially misled investors by failing to disclose the full extent of RiT's reliance on an agreement with RiT CIS pursuant to which RiT CIS was granted a non-exclusive right to distribute RiT products and services in the CIS region (the "Distributor Agreement").

On March 3, 2015, RiT filed a Form 6-K with the SEC (the "2015 6-K") announcing it had entered into the Distributor Agreement with RiT CIS. *See* 2015 6-K, Dkt. No. 28-3. Specifically, the 2015 6-K explained that "RiT CIS was granted a non-exclusive right to distribute, sell, and/or maintain RiT's products in the territory of the Russian Federation and the CIS." Second Amended Complaint ("SAC"), Dkt. No. 39-2 at ¶ 18 (citing 2015 6-K at 2). The 2015 6-K, which was signed by Defendant Erov, stated explicitly that RiT CIS is a Russian company, affiliated with RiT's controlling shareholder, Stins Coman Incorporated ("Stins Coman").  A copy of the Distributor Agreement was attached to the 2015 6-K. *See* 2015 6-K at Ex. 99.1.

On April 22, 2015, RiT filed with the SEC a Form 20-F for the 2014 fiscal year ("2014 20-F"), signed by Defendant Hania. *See* 2014 20-F, Dkt. No. 28-4. In the 2014 20-F, Defendants Hania and Erov signed certifications pursuant to the Sarbanes-Oxley Act of 2002 attesting to the disclosure of all fraud. *Id.* The 2014 20-F referred to RiT CIS an additional non-exclusive distributor, stating in part the following:

---

[3] The Commonwealth of Independent States includes Armenia, Belarus, Kazakhstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan.

> [I]n 2015 we appointed RiT CIS Ltd., or RiT CIS, a Russian company affiliated with Stins Coman, as an additional non-exclusive distributor of our products in Russia and the CIS.
> 
> . . .
> 
> **Recent Major Business Developments**
> 
> Below is a summary of the major business developments in RiT since January 1, 2014:
> 
> *Distributor Agreement with RiT CIS*. In efforts to realign and improve our sales in the CIS market, we entered into a Distributor Agreement dated January 6, 2015, with RiT CIS Ltd., a Russian company affiliated with Stins Coman ("RiT CIS"), whereby we designated RiT CIS as our additional and non-exclusive distributor in said territory' (See "Item 7.B — Related Party Transactions" below).

2014 20-F at 15. The 2014 20-F disclosed that Stins Coman beneficially owned a majority of RiT's ordinary shares and that some members of RiT's Board of Directors were affiliated with Stins Coman. *Id.* at 10.

On December 7, 2015, RiT issued a press release entitled "RiT Strengthens Its Contractual Networking in Russia and CIS" (the "2015 Press Release"). *See* 2015 Press Release, Dkt. No. 28-5. The 2015 Press Release, which was attached to the Form 6-K that RiT filed with the SEC on December 14, 2015, referred to RiT CIS as RiT's "Distributor in Russia" and stated the following:

> [RiT] announced today that RiT CIS Ltd.-its distributor in Russia ("RiT CIS"), had formed [a] strategic alliance with several major IT-companies in Russia.
> . . .
> 
> RIT CIS LTD., is an official distributor of RiT Technologies, specializing in creating Converged Infrastructure Management Solutions and physical connections in Russia and CIS.

*Id.*

According to Plaintiffs, a series of statements made by RiT throughout 2016 progressively revealed the "true nature" of RiT's relationship with RiT CIS. On February 11, 2016, RiT issued a press

3

release that described RiT CIS as "its major distributor in Russia and the CIS region" and stated that RiT CIS was delaying payments to RiT, adversely impacting RiT's cash flow. SAC at ¶ 35. On this news, shares of RiT fell $0.60 per share. On April 20, 2016, RiT issued another press release announcing that the collection of overdue debts from RiT CIS was progressing more slowly that planned, and that Defendant Mantsur, the CFO of RiT, was resigning. On this news, shares of RiT fell $0.32 per share. Another press release on May 10, 2016, announced that RiT had not made any further progress in collecting the overdue debt from RiT CIS. On this news, shares of RiT fell $0.04 per share.

In the proposed Second Amended Complaint, Plaintiffs contend that the statements from the 2015 6-K, the 2014 20-F, and the 2015 Press Release as set forth above were materially false and misleading because they failed to disclose that:

> (1) rather than just an 'additional' and 'non-exclusive' CIS distributor, RiT CIS was RiT Technologies' by far largest customer since no later than January 1, 2015, constituting between 30% and 80% of RiT Technologies' business worldwide and virtually [RiT's] only CIS customer; and (2) RiT CIS was vital to the continued viability of RiT Technologies . . . .

SAC at ¶ 23.

The initial Complaint in this matter was filed on July 28, 2016. *See* Dkt. No. 1. Upon consent of Defendants, Plaintiffs filed an Amended Complaint on April 16, 2018. *See* Dkt. No. 23. On June 15, 2018, the individual Defendants filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 28. The Court granted Defendants' motion to dismiss without prejudice to the filing of a "properly supported motion to amend within 45 days." *See* Dkt. Nos. 34, 35. Plaintiffs subsequently filed the present motion to amend.

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330 (1970). In determining a motion

4

for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15." *Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

Defendants, in opposition to Plaintiffs' motion, contend that the proposed amend is futile. An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. *Antoine v. KPMG Corp.,* 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows v. Hudson County Bd. of Elections,* 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006).

When ruling on a motion to dismiss under Rule 12(b)(6), a court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. *490 Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). Ordinarily, it is sufficient

5

to plead facts that do no more than raise an allegation to the level of plausibly warranting relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). However, in cases alleging securities fraud, plaintiffs must "satisfy the heightened pleading rules codified in" the Private Securities Litigation Reform Act ("PSLRA"). *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).

"[T]o restrict abuses in securities class-action litigation," *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 n.8 (3d Cir. 2006) (internal quotation marks omitted), the PSLRA requires that the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed," *id*. at 276 (quoting 15 U.S.C. § 78u–4(b)(1)(B)). This standard "requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story." *Avaya*, 564 F.3d at 253 (internal quotation marks omitted). A complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," U.S.C. § 78u–4(b)(2)(A), specifically "scienter," which is defined in this context as a "knowing or reckless" mental state "embracing intent to deceive, manipulate, or defraud." *Avaya*, 564 F.3d at 252 (internal quotation marks omitted).

To state a claim under Section 10(b), a plaintiff must allege "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014) (citations omitted). In granting Defendants' previous motion to dismiss, the Court found that Plaintiffs had failed to sufficiently plead the first two elements. In the proposed Second Amended Complaint, Plaintiffs have

6

included additional factual allegations in an attempt to remedy the deficiencies previously identified by the Court. The Court will now address each element in turn.

### A. Material Misrepresentation or Omission

According to Plaintiffs, Defendants' public statements were materially false and/or misleading in that they did not adequately describe: (1) the nature of the Distributor Agreement; or (2) RiT's overall reliance on RiT CIS, and by extension, Stins Coman,

A statement or omission is materially misleading if "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available'" to that investor. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011) (quoting *Basic v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ); *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 129 (3d Cir. 2017).

Courts considering motions to dismiss have often observed that materiality is a fact-specific issue, better resolved by the fact finder. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274 (3d Cir. 2004) ("Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal."); *Siracusano v. Matrixx Initatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009) (citing *Basic*, 485 U.S. at 236, 108 S.Ct. 978) ("The Supreme Court has rejected the adoption of a bright-line rule to determine materiality" because the analysis requires "delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences") (internal quotations omitted); *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 317 (3d Cir. 1997) ("[T]he emphasis on a fact-specific determination of materiality militates against a dismissal on the pleadings."). "Only if the alleged misrepresentations or omissions are so *obviously unimportant* to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule

7

that the allegations are inactionable as a matter of law." *Adams Golf*, 381 F.3d at 275 (internal quotations omitted) (emphasis in original).

In dismissing Plaintiffs' Amended Complaint, the Court found that "[t]he misrepresentations and omissions alleged . . . are either so obviously unimportant to an investor that reasonable minds could not differ on the question of materiality, or are not actually misleading at all, because they would not affirmatively lead investors in the wrong direction as a result of their incompleteness." Dkt. No. 34 at p. 10. The Court first addressed Plaintiffs' contention that Defendants' public statements did not adequately describe the nature of the Distributor Agreement. Citing to Plaintiffs' allegations that RiT's public statements which described RiT CIS "'an additional non-exclusive distributor' must have concealed RiT CIS's true status as RiT's 'major' distributor," the Court noted that Defendants' "[f]ailure to use a particular adjective or form of words does not equate to an actual misrepresentation," and found that because the 2014 20-F included a description of the Distributor Agreement under the heading "'Recent Major Business Developments,' [a] reasonable investor would necessarily read the 2014 20-F disclosure of the [D]istribut[or] [A]greement as a 'major' development." *Id.* at p. 10-11.

As to Plaintiffs' claim that Defendants did not adequately describe RiT's overall reliance on RiT CIS, the Court found that although "Plaintiffs imply that the description of RiT CIS as an *additional* distributor and non-exclusive one, though accurate, misled investors," Plaintiffs had failed to plead any non-conclusory facts in support of that inference. *Id.* at p. 11. Specifically, the Court noted the absence of any allegations by Plaintiffs regarding the nature or size of RiT's other distributors, the amount of business the Distributor Agreement totaled in relation to other distributors, or that RiT CIS, "although billed as a nonexclusive distributor, was *de facto* an exclusive one." *Id.* Furthermore, the Court found that the Amended Complaint did not "quantify or explain the importance to an investor of RiT CIS being (or not being) the largest CIS distributor among a group of smaller ones, even assuming that is true." *Id.* Finally,

8

turning to Plaintiffs' claim that Defendants were trying to conceal their reliance on transactions involving Stins Coman, the Court found that public documents cited by Plaintiffs "repeatedly disclose that Stins Coman was a related party, and specify in detail its status as the controlling shareholder of RiT." *Id.*

Plaintiffs, in their proposed Second Amended Complaint, have attempted to remedy the foregoing deficiencies previously identified by the Court through the addition of factual allegations regarding the amount of RiT's revenue generated by RiT CIS. According to Plaintiffs, these additional factual allegations, obtained through interviews with confidential witnesses alleged to be former RiT employees, demonstrate that:

> (a) RiT CIS was already [RiT's] largest and by far most important customer in 2014, and the relationship expanded exponentially in 2015;
> (b) [t]he percentage of [RiT's] 2014 and 2015 sales attributable to RiT CIS was between 30%-80% of total RiT Technologies' sales; and
> (c) RiT CIS' purchases of [RiT] services totaled $3-12 million per year, while the next largest clients . . . purchased only $500,000 in services.

SAC at ¶25. Plaintiffs contend that these additional facts render Defendants' public statements materially false and/or misleading because they failed to disclose that: "(1) rather than just an 'additional' and 'non-exclusive' CIS distributor, RiT CIS was RiT Technologies' by far largest customer . . . and virtually [RiT's] only CIS customer; and (2) RiT CIS was vital to the continued viability of RiT Technologies." SAC at ¶ 23.

While the additional factual allegations regarding the overall revenue generated by RiT CIS in relation to that generated by RiT's other clients arguably address the deficiencies identified by the Court as to Plaintiffs' latter contention that Defendants' public statements did not sufficiently convey the importance of the Distributor Agreement to the continued viability of RiT, they do little to address the shortcomings outlined in Plaintiffs' former contention that Defendants' classification of RiT CIS as an "additional" and "non-exclusive" distributor did not adequately describe the nature of the Distributor Agreement. Indeed, it remains true that Defendants did describe the Distributor Agreement as a "major

9

business development" and included a copy of the Distributor Agreement with their public filings, and it appears to the Court that Plaintiffs' additional factual allegations fail to demonstrate that Defendants' public statements were misleading. However, the Court need not determine whether the Second Amended Complaint sufficiently pleads materiality because, as set forth below, the Court finds that Plaintiffs have failed to plead scienter.

### B. Scienter

Plaintiffs contend that because Defendants "must have been aware of the fact the RiT CIS generated at least 30-50% of [RiT's] business and that Stins Coman-related customers generated half of [RiT's] sales," their public statements describing RiT CIS as an "additional" and "non-exclusive" distributor were so false and misleading that they could not lead to any other conclusion than that Defendants' "knowingly sought to keep the critical nature of RiT CIS's relationship with [RiT] under wraps." SAC at ¶¶ 33-34.

To sufficiently plead scienter under the PSLRA's heightened pleading rules, a complaint must state with particularity facts giving rise to a "strong inference" that the defendants acted with intent to deceive, manipulate, or defraud. 15 U.S.C. § 78u-4(b)(2)(A); *see Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241–42 (3d Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). A "strong inference" of scienter exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324, 127 S.Ct. 2499. To support the inference, plaintiffs may rely on facts that show motive and opportunity to commit fraud, or otherwise, "facts constituting circumstantial evidence of either reckless or conscious behavior." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 530 (3d Cir. 1999) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 269 (2d Cir. 1993)).

In dismissing Plaintiffs' Amended Complaint, the Court addressed Plaintiffs' overarching contention that the inference of scienter arises because Defendants' public statements "were so clearly false and misleading that they could not have been uttered without intent to defraud." Dkt. No. 34 at p. 13. This contention, the Court found, was just the sort of "conclusory allegation[] of motive and opportunity" which does not satisfy the PSLRA's heightened standards. *Id.* Furthermore, the Court found that:

> Even assuming that scienter *could* be concluded from the facts as pled in the Amended Complaint, an alternative plausible inference is that the Defendants believed that their public statements accurately reflected the facts when they were filed in March-April 2015. The Distribut[or] Agreement itself was included with RiT's public filings, it was described as a "major business development," and the nature of the Stins Coman relationship was disclosed. Under the *Tellabs* standard, the allegation of scienter fails because there are nonculpable inferences that are at least as compelling as the inference that Defendants acted with scienter.

*Id.* (citing *Tellabs*, 551 U.S. at 324; *Avaya*, 564 F.3d at 269 (finding scienter requires "a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter.")).

In the proposed Second Amended Complaint, Plaintiffs have added factual allegations to support their assertion that Defendants were aware of RiT's alleged dependence on RiT CIS and have clarified their contention that Defendants' reason and motive for failing to disclose RiT CIS's status as RiT's "largest customer" was that "investors would dislike the risk created by [RiT's] business being so heavily dependent on a single customer" and that "[t]he market, in general, and [RiT's] shareholders in particular would look askance – or would, at a minimum, be wary of [RiT's] future prospects when its by far largest distributor . . . was an entity affiliated with [RiT's] controlling shareholder." SAC at ¶33.

However, while the additional facts pled by Plaintiffs in the proposed Second Amended Complaint arguably strengthen the likelihood that scienter "could be concluded from the facts as pled," the alternative plausible inference that Defendants believed their public statements accurately reflected the facts when

11

they were made remains at least as compelling as the inference that Defendants acted with scienter. Although Plaintiffs have strengthened their allegations that the Distributor Agreement was indeed "major" and that RiT's continued viability was heavily dependent on RiT CIS, it remains true that Defendants' public statements included a copy of the Distributor Agreement itself, described the Distributor Agreement as a "major business development," and disclosed RiT's relationship with Stins Coman. Despite Plaintiffs' efforts to demonstrate that Defendants' statements were the product of deceptive intent, it appears to the Court to be at least as likely as not that Defendants harbored no such intent and that their public statements represented an accurate portrayal of the circumstances surrounding the Distributor Agreement as Defendants viewed them at that juncture. Thus, considering the facts alleged in the proposed Second Amended Complaint holistically, the Court finds that Plaintiffs have failed to satisfy the PSLRA's requirement that there be a strong inference that Defendants acted with scienter. Accordingly, because the Court finds that Plaintiffs have failed to plead scienter, the proposed Second Amended Complaint is futile and Plaintiffs' motion to amend [Dkt. No. 39] is therefore **DENIED**.[4]

**IT IS SO ORDERED.**

s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**

---

[4] Although the proposed Second Amended Complaint includes a second cause of action under Section 20(a) of the Exchange Act, liability under Section 20(a) depends on there being an underlying violation of the Exchange Act. *City of Edinburgh*, 754 F.3d at 168. Because Plaintiffs have failed to plead such a violation, the Section 20(a) claim is futile.