UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN PADGETT, individually and on behalf of all others similarly situated<br><br>    Plaintiff,<br><br>    v.<br><br>RIT TECHNOLOGIES LTD., AMIT MANTSUR, YOSSI BEN HAROSH, ERAN EROV, and MOTTI HANIA,<br><br>    Defendant. | Civ. No. 16-4579 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the Court on the appeal, by the plaintiffs Martin and Hershel Smilovich, of a letter order of Magistrate Judge James B. Clark. Judge Clark denied as futile the plaintiffs' motion to file a second amended complaint, an order which effectively disposed of what remained of the case. After *de novo* review, I **AFFIRM** Judge Clark's order denying the plaintiffs' motion for leave to amend.

**I.   BACKGROUND**

    Because I write for the parties, familiarity with the matter is presumed. I refer in particular to my opinion of February 22, 2019, in which I granted Defendants' motion to dismiss Plaintiffs' first amended complaint. (DE 34).[1]

  **A. The Parties**

    Martin and Hershel Smilovich are the co-lead plaintiffs of a putative class consisting of all persons other than Defendants who acquired RiT securities between March 3, 2015 and July 1, 2016. (SAC ¶¶ 1 & 6).

---

[1] "DE __" refers to the docket entry numbers in this case. "SAC" refers to the proposed second amended case, located at DE 39-1.

Defendant RiT Technologies Ltd. is an Israeli-based company that provides intelligent infrastructure management and indoor optical wireless technology solutions to enhance security and network utilization for workspace environments. (SAC ¶ 7).

Defendant Yossi Ben Harosh was the CEO and president of RiT. (SAC ¶ 8). Defendant Amit Mantsur was the CFO of RiT. (SAC ¶ 9). Defendant Eran Erov is RiT's vice president of finance. (SAC ¶ 10). Defendant Motti Hania was the CEO and president of RiT. (SAC ¶ 11).

The crux of Plaintiff's claim is that Defendants materially misled investors by failing to disclose the full extent of RiT's reliance on an agreement with RiT CIS Ltd. ("RiT CIS"). That agreement provided that RiT CIS was a non-exclusive distributor of RiT products and services in the Commonwealth of Independent States ("CIS") region.[2] The language RiT used to describe this agreement, though accurate, is alleged to have been deceptively incomplete.

### B. The Original Factual Allegations

On March 3, 2015, RiT filed a Form 6-K with the SEC announcing that on January 6, 2015 it had entered into a distributor agreement with RiT CIS. (SAC ¶ 18). The 6-K explained that RiT CIS had acquired a "non-exclusive right to distribute, sell, and/or maintain RiT's products in the territory of the Russian Federation and the CIS." (SAC ¶ 18). RiT hoped that this agreement would realign and improve its sales in the CIS countries. (2015 6-K at 2).

On April 22, 2015, RiT filed with the SEC its 2014 Form 20-F. (SAC ¶ 19). The 2014 20-F referred to RiT CIS as an additional non-exclusive distributor:

> ***[I]n 2015 we appointed RiT CIS Ltd., or RiT CIS***, a Russian company affiliated with Stins Coman, ***as an additional non-exclusive distributor of our products in Russia and the CIS.***
>
> . . .

---

[2] The Commonwealth of Independent States includes Armenia, Belarus, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan. (SAC ¶ 17).

> *Distributor Agreement with RiT CIS.* In efforts to realign and improve our sales in the CIS market, we entered into a Distributor Agreement dated January 6, 2015, with RiT CIS Ltd., a Russian company affiliated with Stins Coman ("RiT CIS"), ***whereby we designated RiT CIS as our additional and non-exclusive distributor in said territory*** . . .

(SAC ¶ 20 (emphasis Plaintiffs'); 2014 20-F at 15).

On December 7, 2015, RiT issued a press release entitled "RiT Strengthens Its Contractual Networking in Russia and CIS." The press release referred to RiT CIS as RiT's "Distributor in Russia":

> [RiT] announced today that RiT CIS Ltd.-its distributor in Russia ("RiT CIS"), had formed [a] strategic alliance with several major IT-companies in Russia.
>
> . . .
>
> RIT CIS LTD., is an official distributor of RiT Technologies, specializing in creating Converged Infrastructure Management Solutions and physical connections in Russia and CIS.

(SAC ¶ 21). A copy of this press release was included with the Form 6-K that RiT filed with the SEC on December 14, 2015. (SAC ¶ 22).

Plaintiffs filed the original complaint on July 28, 2016. (DE 1). The Court approved the appointment of the Smiloviches as co-lead plaintiffs. They then filed the first amended complaint. (DE 11, 23 & 28). The Court dismissed the first amended complaint for failure to state a claim. (DE 34)

### C. New Allegations

The proposed second amended complaint, filed after this Court dismissed the first amended complaint, contains new allegations. These, according to Plaintiffs, correct the pleading deficiencies that led to the dismissal of the first amended complaint. (SAC ¶¶ 24–33).

After this Court dismissed the prior complaint, Plaintiff's counsel engaged an Israeli investigative firm to gather further information relating to RiT's financial position. (SAC ¶ 24). The investigative firm reviewed the publicly available liquidator's report and conducted confidential interviews of former RIT

employees. (SAC ¶ 24). During the interviews, the witnesses did not have access to the documentary financial records, and their recollections diverged somewhat. (SAC ¶ 25). Plaintiffs assert that there nevertheless emerged from the witnesses' statements several common themes:

- RiT CIS was already RiT's largest—and by far most important—customer in 2014, and that relationship expanded significantly in 2015;
- The percentage of RiT's 2014 and 2015 sales attributable to RiT CIS was between 30% and 80% of total sales;
- RiT CIS's purchases of RiT's services were between $3 and $12 million annually, while the next largest clients purchased only $500,000 in services from RiT each year. (SAC ¶ 25).

With respect to each confidential witness's account, Plaintiffs allege the following:

- Confidential Witness 1 was in charge of fulfilling RiT CIS's orders. According to Confidential Witness 1: (i) RiT CIS became an RiT customer in January 2014; (ii) RiT CIS ordered from RiT services totaling between $3 million and $4 million per quarter; and (iii) RiT CIS was RiT's largest and most important customer. (SAC ¶ 27).
- Confidential Witness 2 was a sales manager at RiT. According to Confidential Witness 2: (i) in 2014 and 2015, RiT CIS was an active RiT customer; (ii) RiT CIS generated as much as 50% of RiT's total sales during that time; and (iii) RiT CIS was RiT's largest and most important customer. (SAC ¶ 28).
- Confidential Witness 3 was an RiT sales manager and as such was familiar with its sales to RiT CIS. According to Confidential Witness 3: (i) in 2013, RiT had already made sales to RiT CIS, and the amount and value of those sales grew thereafter; and (ii) RiT's 2014 sales to RiT CIS totaled $2.2 million. Confidential Witness 3 knew of those figures because RiT's management disclosed detailed customer sales figures for the prior year at the annual January employee meeting. (SAC ¶ 29).

- Confidential Witness 4 was a vice president of marketing for RiT. According to Confidential Witness 4: (i) in 2015, RiT CIS purchased $3.2 million in services from RiT, which constituted 40% of RiT's total sales; (ii) RiT's next-largest customer purchased only $500,000 in services; and (iii) RiT CIS was by far RiT's largest and most important customer. (SAC ¶ 30).

According to the report of RiT's liquidation, in 2016 customers affiliated with RiT's controlling shareholder, Stins Coman Incorporated, carried an outstanding debt to RiT of $6 million. (SAC ¶ 32). Estimates based on RiT's 2015 Form 6-K, suggested total annual sales of $12 million to $15 million. (SAC ¶ 32). In other words, Stins Coman-affiliated entities owed RiT for approximately 40–50% of RiT's total annual sales. (SAC ¶ 32).

Plaintiffs conclude that the individual defendants must have known that RiT CIS generated at least 30–50% of RiT's revenue and that Stins Coman-related customers generated half of RiT's sales in 2015. (SAC ¶ 33). Plaintiffs allege that during the class period RiT employed between twenty-seven and sixty-five people and had fewer than ten major customers. (SAC ¶ 33). During that time, management met annually with each employee to report major sales. (SAC ¶ 33). Accordingly, the individual defendants, as RiT officers, would have had reason to know this basic information about RiT CIS, RiT's largest customer. (SAC ¶ 33).

### D. Plaintiffs' Claims

Plaintiffs allege that the filings made by Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Plaintiffs allege that the statements were materially false or misleading because they failed to disclose that: (1) RiT CIS was RiT's major distributor in Russia and the CIS region; and (2) RiT CIS was vital to the RiT's viability. (SAC ¶ 23). Those omissions, which downplayed the significance of the RiT CIS distributor agreement, also allegedly concealed the full extent of RiT's dependence on Stins Coman. (SAC ¶ 34).

With respect to scienter, Plaintiffs allege that "[g]iven RiT CIS's importance for the Company's continued viability, the Individual Defendants were aware of both RiT CIS's status as the Company's major distributor in Russia and the CIS region and RiT CIS's indispensability for the Company's viability." (SAC ¶ 34). In other words, Plaintiffs claim that Defendants acted with scienter because they allegedly knew the public statements were materially misleading when they participated in the dissemination of those statements. (SAC ¶ 62).

## II. DISCUSSION

### A. Standard of Review

Judge Clark's denial of the motion to amend applied a motion-to-dismiss standard and was the functional equivalent of a motion to dismiss. My standard of review of a magistrate judge's order of dismissal of a case is *de novo*. *See* 28 U.S.C. § 636(b); *see also* Fed. R. Civ. P. 72(b); Loc. R. 72.1(c)(2). "'De novo review' means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered." 12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.). Upon conducting *de novo* review, the district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *Mebuin v. United States*, No. 13-446, 2015 WL 5837654 at *3 (D.N.J. Oct. 11, 2015). I have reviewed the record of the case and examined the Magistrate Judge's decision, which involved no fact finding, but only an assessment of the facial sufficiency of the proposed second amended complaint.

### B. The Securities Exchange Act and Rule 10b-

To allege a viable Section 10(b) claim, a plaintiff must plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir.

2014); *In re Hertz Glob. Holdings Inc*, 905 F.3d 106, 114 (3d Cir. 2018). Such a claim is subject to the heightened pleading standards imposed by the Private Securities Litigation Reform Act. *See Hertz Glob.*, 905 F.3d at 114.

Defendants argue that Plaintiffs have failed to sufficiently plead the first and second elements.

### A. Material Misrepresentation or Omission

A statement or omission is materially misleading if "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *Basic v. Levinson*, 485 U.S. 224, 231–32 (1988)); *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 129 (3d Cir. 2017).

Courts considering motions to dismiss have often observed that materiality is a fact-specific issue. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274 (3d Cir. 2004) ("Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal."). However, "if the alleged misrepresentations or omissions are so *obviously unimportant* to an investor that reasonable minds cannot differ on the question of materiality it is appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Adams Golf*, 381 F.3d at 275 (internal quotations omitted) (emphasis in original). Moreover, in order for a statement to be misleading, "it is not enough to allege that the statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement *affirmatively led the plaintiff in a wrong direction* (rather than merely omitted to discuss certain matters)." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 419–20 (D.N.J. 2010) ("[T]he burden of factual assertion establishing such 'misleading type' of incompleteness rests with the plaintiff.") (emphasis in original).

In my February 22, 2019 opinion dismissing the first amended complaint, I noted that the misrepresentations and omissions alleged therein

7

were either obviously unimportant to an investor or were not actually misleading at all, because their alleged incompleteness would not affirmatively lead investors in the wrong direction:

> The materiality allegations boil down to two main contentions: (1) Defendants did not adequately describe the nature of RiT's Distribution Agreement with RiT CIS; and (2) Defendants did not adequately describe RiT's overall reliance on RiT CIS (and, by extension, Stins Coman). The Amended Complaint is vague as to the misimpression that was created, and how it would have affected an investment decision. *See Brody v. Transitional Hosps. Corp.,* 280 F.3d 997, 1006 (9th Cir. 2002) ("In order to survive a motion to dismiss under the heightened pleading standards of the [PLSRA], the plaintiffs' complaint must specify the reason or reasons why the statements made by [the defendants] were misleading.").

(DE 34 at 9).

I find that the proposed second amended complaint has not cured these defects. To be sure, Plaintiffs' new allegations bolster their argument that RiT CIS was a major distributor of RiT's services. That, however, was taken as true for purposes of the prior motion to dismiss. Plaintiffs still have not sufficiently alleged (1) what about this alleged omission affirmatively led reasonable investors in the wrong direction; and (2) that a reasonable investor would not have otherwise known that the distributor agreement was important to RiT's financial success.

*First*, it is not clear what false impression the proposed second amended complaint purports to allege. Plaintiffs do not identify any reason *why* Defendants' statements could mislead investors. We could hypothesize, for example, that Stins Coman—and by extension RiT CIS—had a reputation for not paying its bills and that RiT's reliance on it was correspondingly precarious. But the proposed second amended complaint does not allege that.

8

That is, Plaintiffs do not explain what misimpression—if there was a misimpression at all—was created by Defendants' alleged omission.[3]

*Second*, the proposed second amended complaint fails to allege that a reasonable investor would not have discerned that RiT CIS was a distributor, and a major one, of RiT's services. (*See* DE 34 at 10–11). True, the public statements did not cite percentages. But they did in fact accurately describe RiT CIS as an additional, non-exclusive distributor in the Russia/CIS region, the appointment of which was sufficiently important to merit a public announcement. The allegedly omitted information regarding the large percentage of business would not have affirmatively misled the reader into thinking RiT CIS would *not* account for a major percentage of sales in that territory.[4]

*Third*, the record is clear that a reasonable investor would have known that RiT had an existing relationship with Stins Coman or was related to RiT CIS. RiT and RiT CS obviously have suggestively similar names, and the 2014 20-F disclosed that RiT CS was "a Russian company affiliated with Stins Coman." RiT itself was a known Stins Coman-affiliated entity (Stins Coman was its controlling shareholder), and RiT had previously done business both with Stins Coman and *other* Stins Coman affiliated entities.

Accordingly, the proposed second amended complaint still fails to allege a material misrepresentation or omission, and I discern no error in Judge Clark's order to that effect.

---

[3]     Again, the proposed second amended complaint "is vague as to the misimpression that was created, and how it would have affected an investment decision." (DE 34 at 9 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("In order to survive a motion to dismiss under the heightened pleading standards of the [PLSRA], the plaintiffs' complaint must specify the reason or reasons why the statements made by [the defendants] were misleading."))).

[4]     There is no allegation that the size of the RiT CS receivable, in and of itself, was omitted or misrepresented. If it was reflected in the company's financials, that might be another means for the investor to glean that RiT CS accounted for a major portion of RiT's business.

### B. Scienter

Defendants assert that the proposed second amended complaint does not plead the strong inference of scienter necessary to survive a motion to dismiss. To adequately plead scienter under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). That state of mind the Third Circuit has "described as one 'embracing [an] intent to deceive, manipulate, or defraud,' either knowingly or recklessly." *In re Hertz Glob. Holdings Inc*, 905 F.3d at 114 (quoting *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)).

A strong inference of scienter is pled "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). That is not to say, however, that a plaintiff must "come forward with 'smoking-gun' evidence to meet the PSLRA's pleading requirements." *Hertz Glob.*, 905 F.3d at 114. "Rather, in conducting the scienter analysis, courts must analyze the complaint holistically to determine whether its allegations, 'taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *Tellabs*, 551 U.S. at 323. "'In assessing the allegations holistically as required by *Tellabs*, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective.'" *Avaya*, 564 F.3d at 272–73 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)).

In my opinion dismissing the first amended complaint, I noted that Plaintiffs' theory of scienter rested on Defendants' alleged awareness of RiT CIS's importance for RiT's continued viability, and their knowledge that the disclosures were materially false and misleading. (DE 34 at 10–11 (quoting DE 23 ¶¶ 25 & 53)). Those prerequisites were not supported by sufficient factual

10

content, however, and the proposed second amended complaint does not cure these deficiencies. With respect to scienter (*see* SAC ¶¶ 24–33), Plaintiffs' new allegations do little more than establish that, because of the size and corporate structure of RiT, the individual defendants likely knew that RiT CIS was a major distributor of its services. But the new allegations fall short of alleging that that the individual defendants *knew* that this omission was material and misleading to an investor—if indeed there was a misleading omission at all, *see supra.*

The new scienter allegations, drawn from the confidential witnesses' accounts and liquidation report, seek to allege two separate theories: (1) that RiT CIS was an important client for RiT's long-term viability (*see* SAC ¶¶ 25–32); and (2) that RiT's corporate structure was so cohesive and integrated that if its rank-and-file employees knew the importance of RiT CIS, so too must have its officers. (*See* SAC ¶¶ 30–33). The first theory is not independently relevant to the scienter analysis; it would matter only if the second theory established some inference of knowledge and deceptive intent. But the second theory does not do that. All it does is increase the likelihood that the individual defendants, and RiT as a whole, knew that RiT CIS was crucial to RiT's performance. But the allegations do not advance the inference that Defendants knew that the disclosures were materially false or misleading.

Plaintiffs also allege that Judge Clark misapplied the law with respect to culpable and innocent inferences of scienter. (DE 43 at 4–5). Because my review is *de novo*, and I find that Plaintiffs have not sufficiently alleged a culpable inference at all, the issue is moot. Even so, Plaintiffs' characterization of Judge Clark's order is misplaced. It seems to hinge on the minuscule distinction between "as likely" and "at least as likely." True, Judge Clark's order equivocated somewhat on the issue of whether it was "at least as likely as not that Defendants harbored [scienter] and that their public statements represented an accurate portrayal of the circumstances." But the order was clear enough to demonstrate that Judge Clark had the proper standard firmly

in mind. The order stated the PSLRA's heightened pleading requirements and plainly found, after a holistic view of the proposed second amended complaint, that it failed to meet those standards. (DE 42 at 12). On *de novo* review, applying the proper standard, I agree. Accordingly, the proposed second amended complaint does not establish Defendants' scienter.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs' appeal of the magistrate judge's order is **DENIED**.

A separate order will issue.

Dated: September 1, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**